Cole v. Dorr.

· ·JOSEPH J. COLE *et al.* v. RICHARD N. DORR,
*as City Clerk, etc.*

No. 16,362.

SYLLABUS BY THE COURT.

:1. CONSTITUTIONAL LAW—*Act Empowering Cities to Adopt Commission Plan of Government—Delegation of Powers—Special Act—Uniform Operation.* The statute (Laws 1907, ch. 114) providing a scheme of municipal government commonly known as the "commission plan," to be operative only in those cities that adopt its provisions by popular vote, is not void as an attempt to delegate legislative power to the people of such municipalities, nor as a violation of the sections of the constitution forbidding the conferring of corporate power.by special act and requiring provision to be made by general law for the organization of cities, nor as failing to have a uniform operation throughout the state.

:2. ——— *Curative Act—Intelligibility—Construction.* The statute reading "All cities of the first class of the state of Kansas that have  . . .  adopted by majority vote of the electors voting at an election called for the purpose of adopting the commission form of government  . . .  shall be from and after the passage of this 'act ratified, confirmed and legalized, regardless of any and all irregularities that may have occurred in the calling, advertising, publishing and conducting of said election" (Laws 1909, ch. 76, § 1) is to be interpreted as intending to legalize all city elections previously held for the purpose of voting on the question of the adoption of the commission form of government at which a majority of the votes cast were in favor of such proposition.                -

:3. ——— *Curative Act—Special Legislation.* An act validating a city election which is otherwise rendered void by a°failure to give the notice required by statute is not obnoxious to the constitutional prohibition against conferring corporate power by special act if it applies to all cities in the same situation, notwithstanding it results in a classification based upon existing conditions only.              .

Original proceeding in mandamus.  Opinion filed May 8, 1909.  Writ denied.

*Freerks & Freerks,* and *Frank Doster,* for the plaintiffs.

*Fred B. Stanley,* for the defendant.

The opinion of the court was delivered by

MASON, J.: In 1907 a law was enacted (Laws 1907, ch. 114) providing a scheme of municipal government, commonly known as the "commission plan," to be operative in such cities of the first class as should adopt it by a popular vote at a special election called for that purpose. In Wichita the question whether the city should avail itself of the act was submitted to the people and received a majority of the votes cast, but notice of the election was not given for the full time required by the statute. A curative act was passed (Laws 1909, ch. 76) undertaking to validate the election notwithstanding this defect. To determine by what method the then approaching city election should be held a proceeding in mandamus was brought against the city clerk to require him to file certain certificates of nomination for municipal offices, which had been prepared on the theory that no change had been effected in the former law on the subject. The application for the writ was denied within a few days after the submission of the question, an early decision being necessary, but owing to the shortness of the time available for its preparation no opinion was then filed. The plaintiffs' principal contentions were:

(1) That the act permitting such cities as by popular vote elect to do so to adopt a form of government differing from that in force in other cities of the same class is void because violative of the several provisions of the state constitution (a) vesting the legislative power in the house of representatives and senate, (b) forbidding the passage of special acts conferring corporate power and requiring provision to be made by general law for the organization of cities, and (c) requiring all laws of a general nature to have a uniform operation throughout the state.

(2) That even if the act is regarded as valid it is not operative in Wichita, the defective notice having ren-

Cole v. Dorr.

dered the election ineffective, and the defect not having been cured by the subsequent legislation because (a) the curative act does not purport to accomplish that purpose, and (b) if it is so construed it is void as an attempt to confer corporate power otherwise than by a general law.

The claim that in leaving the various cities of the first class free to adopt or reject the provisions of the act of 1907 the legislature attempted to delegate its powers to the people of those municipalities requires little discussion. Even in jurisdictions where it is held that the taking effect of a statute can not be made to depend upon the result of a popular vote the principle is recognized that "if an act in question is complete in itself, and requires nothing further to give it validity as a legislative act, it is not vulnerable to attack on constitutional grounds simply because the limits of its operation are made to depend upon a vote of the people." (*Eckerson v. City of Des Moines,* 137 Iowa, 452, 478.) If this court has not heretofore expressly approved this doctrine, it has approached it too nearly to leave any substantial ground for controversy. (See *The State v. Butler County,* 77 Kan. 527, and cases there cited.) And so many other courts have affirmed it that the question can not fairly be regarded as an open one. (See cases collected in 8 Cyc. 840, 4 Dec. Dig. pp. 1616-1618 and subsequent volume of Am. Dig. Ann. under the title of "Constitutional Law," and note in 114 Am. St. Rep. 317.) The statute is not vulnerable to attack on this ground.

The objection that the statute is in effect special legislation, inasmuch as it enables certain cities to be governed under a plan different from that in use in others of the same class, is more serious. The constitution provides that "the legislature shall pass no special act conferring corporate powers" (art. 12, § 1), and that "provision shall be made by general law for the organization of cities" (art. 12, § 5). One of the principal

objects of these provisions undoubtedly is to promote uniformity in the conduct of municipal affairs—to avoid the evils attendant upon allowing each one of a large number of cities to operate under a separate charter—to require all cities similarly circumstanced to be governed in the same manner, permitting variation only when really necessary, and then by means of classification based on real difference of conditions. Obviously, if the legislature may submit various plans of local government, leaving each community free to choose which it will adopt, groups are likely to be formed of similarly governed cities having nothing necessarily in common except a preference for the same system, the effect being a classification based only on the desire of the inhabitants; and in an extreme case so wide a choice may be offered that the affairs of every considerable town may be conducted in a way peculiar to itself.

A review of authorities upon the question involved is presented in Binney's Special Legislation, from which these excerpts are taken:

"Whether proper local self-government requires or makes desirable a choice between different systems of police regulation, or local government or administration, so that a law providing for such a choice must, from the nature of the case, be regarded as general, is a very different question. In some cases the exercise of such an option works the partial repeal of a general law already in force, and such partial repeal, whether expressly forbidden in the state constitution or not, must be regarded as a form of local legislation. . . . In Florida, where the constitution requires that laws regulating municipal government shall be not only general but uniform, it is held that no diversity of government can be allowed, even if the same option be granted to every member of the class to which the law applies. A system once established for a class, its members can not be allowed to decide by ordinance, each one for itself, whether or not it shall be governed by another system. . . . The constitution of Pennsylvania does not in terms require uniformity of municipal government, but the prohibition of local and special legislation is re-

Cole v. Dorr.

garded as equivalent to a requirement of uniformity,
diversity being one of the evils sought to be cured by
this prohibition. It is held in that state that if local or
special results either are or may be produced by a law,
such law is not general, and hence that any change in
the general municipal corporation law can not be lim-
ited to affect only those cities that may adopt the new
act. . . . On the same principle a law has been
held local in Illinois, providing for the collection of city
taxes by a system materially different from that pre-
viously in force, but authorizing any city council to col-
lect the taxes, either under the old law or the new, as
it might at any time prefer. . . . In New Jersey,
however, it has been held that the restrictions upon
special and local legislation do not necessitate uniform
laws as to matters of police and local government, as
such laws would interfere with the proper regulation
of local affairs, and that as long as all cities or other
communities of the same class have the same option the
law which provides for it must be regarded as general.
The same view is taken in Missouri as to police regula-
tions, and in Illinois as to elections. . . . In Illinois
a law regulating elections in such cities, villages and
incorporated towns as should adopt it was held to be
general because of the possibility that all the cities,
towns and villages in the state might accept its pro-
visions, and, in fact, to stand on the same ground as a
municipal corporation law obligatory upon cities, towns
and villages thereafter incorporated, but only affecting
those already incorporated under special charters if
they should accept it. . . . The court undertook
to distinguish this case from that of the tax-collection
law already referred to, . . . but . . . the
two cases are so irreconcilable as to leave some doubt
as to what the law of Illinois is as to this point. . . .
The two views as to the effect of local option laws,
shown in the preceding pages, are irreconcilable, but
one can not expect different constitutions to be inter-
preted in exactly the same way in all matters, even if
the language is substantially identical. What a consti-
tution means is partly a question of fact, and it should
not be hastily assumed that a court of last resort has
been mistaken as to the facts which brought about the
adoption of any part of the constitution under which it
acts. The several courts may all be right as to the facts
before them in each case, however at variance their

ultimate conclusions as to the law." (Pages 99-102, 105, 106.)

In *State ex rel. v. Copeland,* 66 Minn. 315, it was held that a law granting powers to all cities of a certain class, to take effect in each city only upon its adoption there, contravened the provisions of the state constitution prohibiting special legislation as to cities. In *Adams v. The City of Beloit and others,* 105 Wis. 363, and *Eckerson v. City of Des Moines,* 137 Iowa, 452, the contrary view was taken. In the Wisconsin case the grounds of the opposing theories are fully developed. While the weight of authority in other jurisdictions seems to uphold laws of the character of that under discussion, a more important consideration is that this court is already practically committed to that side of the question. In *The State, ex rel., v. Hunter,* 38 Kan. 578, the validity of the metropolitan police act was sustained, although it provided a method of police government to be enforced only in those cities where it should be invoked by local action. In the present case, as in that one, the law involved confers the same *power* upon every city of the class to which it relates. The power exists in each none the less because it may never be called into operation. We conclude that it is a general law within the meaning of the constitutional limitation under discussion, although in practice it may result in similar municipalities being governed by dissimilar methods. It is to be observed that the constitution does not in terms or by necessary implication require absolute uniformity in the government of cities of the same class, although the provisions under consideration were obviously designed to discourage diversity in that regard.

The objection that the statute violates the requirement of the constitution (art. 2, § 17) that all laws of a general nature shall have a uniform operation throughout the state is so similar to that just considered as to require no separate discussion. There is something of

Cole v. Dorr.

the same conflict of authority on the subject, but the question has not been an open one in this state since in *Noffzigger v. McAllister,* 12 Kan. 315, it was said of a herd law the operation of which in each township was made to depend upon the wishes of the inhabitants:

"Neither is this act in contravention of section 17 of article 2 of the constitution. It was enacted for the whole state, and for every part thereof. Any township in the state may come within the provisions of article 1 of the act, or any township may remain out. In this respect the act resembles many other acts which depend for their practical operation upon the discretion of the county board, or the people, or the happening of certain contingencies. There is always a wide discretion allowed counties, and county boards, in the building of court-houses, jails, bridges, and other public improvements, and yet no one has ever supposed that the laws authorizing this discretion were invalid because their operation might not be practically and uniformly the same in every county in the state. Whenever a law of a general nature is passed by the legislature for the whole state, and is not applied by the legislature to any particular locality thereof, and has no words prohibiting its operation in any particular locality, it is a law having a uniform operation throughout the state, within the meaning of said constitutional provision, although it may not practically have operation in every part of the state." (Page 321.)

It may be conceded that the failure to give the statutory notice of the election rendered it a nullity except as the defect may have been remedied by the act of 1909. The plaintiffs insist that no force can be given to that act because as it stands it is meaningless and affords no clue by which it may be rendered intelligible. The substantial part of it reads:

"All cities of the first class of the state of Kansas that have prior to the passage of this act adopted by majority vote of the electors voting at an election called for the purpose of adopting a commission form of government, as provided by chapter 114 of the Session Laws of 1907, and all acts amendatory thereto, shall be from and after the passage of this act ratified, con-

17—80 KAN.

firmed and legalized, regardless of any and all irregularities that may have occurred in the calling, advertising, publishing and conducting of said election." (Laws 1909, ch. 76, § 1.)

True, the act by its very terms purports only to legalize certain cities, but there is no difficulty in ascertaining what is intended. The legislature obviously designed to legalize some action that had been taken irregularly. In saying that such legalization should be accomplished "regardless of any and all irregularities that may have occurred in the calling, advertising, publishing and conducting of said election" it closed the door on any doubt that might otherwise exist that the thing meant to be validated was the irregular election. Similar liberality of interpolation has been indulged in several Kansas cases. (*Landrum v. Flannigan,* 60 Kan. 436; *Brook v. Blue Mound,* 61 Kan. 184; *The State v. Deuel,* 63 Kan. 811.) An illustration of a more radical defect being cured by interpretation is found in *Commonwealth v. Herald Pub. Co.,* 128 Ky. 424, where a statute was upheld which so far as this matter is concerned may be said to have contained merely these words: "Any person who sells any obscene newspaper." The court said:

"Section 1352 is said to be meaningless and uncertain, because there is contained in it no prohibition against the things mentioned in the section, nor is it declared that it shall be unlawful to do them. In the respects mentioned, the section is technically defective, but there can be no reasonable doubt that it was the intention of the legislature to make it unlawful to commit the acts mentioned and to prohibit any person or corporation from doing the forbidden things. The intent of the section being clear, the purpose of its enactment being plain, it will not be allowed to fail because of the omission of the words 'it shall be unlawful for,' which should have been placed at the beginning of the section, or the words 'shall be guilty of an offense,' which should have been added to the section." (Page 432.)

The final contention that requires consideration is

that the curative act itself is invalid because, having
no possible application now or hereafter to any cities
excepting those in which an irregular election had al-
ready been held when it was passed, it is necessarily
special.  A statute granting corporate power that can
apply only to a fixed number of corporations, and can
not possibly at any time apply to any other, is ordi-
narily regarded as special, and therefore unconstitu-
tional.  (*City of Topeka v. Gillett,* 32 Kan. 431.)  But
a curative act is necessarily of that character.  It op-
erates only on conditions already existing.  In a sense
it can have no prospective operation.  Therefore when-
ever it relates to a subject concerning which special leg-
islation is forbidden it is void if subjected to the ordi-
nary test, as some courts have held that it must be.
Other courts, however, recognize an exception arising
from the nature of the case.  Thus, in *State ex rel. v.
Brown,* 97 Minn. 402, 5 L. R. A., n. s., 327, it was said:

"When the statute is remedial or curative the classi-
fication is legal, if it includes within the class all the
subjects which are affected by the condition which it
sought to remedy, or the evils it is sought to cure.  Nec-
essarily this class forms an exception to the general
rule that classification can not be based upon existing
conditions alone.  The very object of the statute is to
remedy a present condition, and if possible avoid its
repetition."   (Page 415.)

The L. R. A. note to that case is so full as to make a
further citation unnecessary.  In this state the question
was settled in *Mason v. Spencer, County Clerk,* 35 Kan.
512, the syllabus reading:

"Where an irregularity rendering an act of a city or
subordinate agency illegal or void is simply a failure
to comply with some provision of the statutes, the com-
pliance with which the legislature might in advance
have dispensed with, the legislature can, by a general
curative statute subsequently passed, dispense with
such compliance and thereby render the act of the city
or subordinate agency legal and valid."

Upon these grounds the statutes of 1907 and 1909

were held valid and the petition of the plaintiffs for a peremptory writ of mandamus requiring the city officers to proceed under the former law was denied.

BURCH, J., dissents from the first paragraph of the syllabus and the corresponding portion of the opinion.