THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general, etc., Plaintiff,* v. R. S. PAULEY, *as County Treasurer, etc., Defendant.*

No. 16,471.

SYLLABUS BY THE COURT.

1. COUNTY HIGH SCHOOLS—*Curative Statutes.* Chapters 210 and 215 of the Laws of 1909 are curative statutes, designed to validate the action taken in counties where a majority of those voting on the proposition had voted to adopt the Barnes high-school law (Laws 1905, ch. 397) and where high schools had been established and maintained in accordance with that law for one year, although such law was not adopted by a majority of all those voting at the election, as the law at that time required.

2. CONSTITUTIONAL LAW—*Uniform Operation—Special Laws— Amendatory Statutes—Taxation.* Chapters 210 and 215 of the Laws of 1909 are not in conflict with section 17 of article 2 of the constitution, declaring that laws of a general nature shall have a uniform operation and restricting the enactment of special laws, nor with section 16 of the same article, relating to amendatory statutes, nor with section 4 of article 11 of the constitution, forbidding the levy of taxes unless in pursuance of a law stating the object of the same. The reasons urged against the validity of these statutes are not sustained, and they are held to be valid laws.

Original proceeding in mandamus. Opinion filed December 10, 1910. Writ allowed.

*Fred S. Jackson,* attorney-general, *W. P. Montgomery,* and *Gregg & Gregg,* for the plaintiff.

*Frank Doster,* and *W. W. Redmond,* for the defendant.

The opinion of the court was delivered by

BENSON, J.: This is an original action to compel a county treasurer to pay to officers of a school district money arising from taxation for the support of a high school.

The answer avers that the taxes in question were levied under the supposed authority of chapter 397 of the Laws of 1905 (see Gen. Stat. 1909, § 7792 *et seq.*), known as the Barnes high-school law, that the law was never adopted in the county, that other acts relating to the same subject and under which the district claims the fund are unconstitutional, and that no authority exists for the disbursement of the fund.

The acts affecting this controversy are: (1) The Barnes law, passed in the year 1905 (Laws 1905, ch. 397), which provided for a referendum and adoption by a majority of the voters voting in any county before it became operative therein. (2) Chapter 333 of the Laws of 1907 (Gen. Stat. 1909, § 7797), providing for a levy to raise the necessary funds for schools existing under the former act. (3) Chapter 69 of the Laws of 1908 (Gen. Stat. 1909, §§ 7795, 7801), providing that the Barnes law should be operative in any county when a majority of the votes cast upon that proposition should be for such adoption. (4) Chapter 210 of the Laws of 1909 (§ 1, Gen. Stat. 1909, § 7809), providing "that in all counties of this state in which high schools have been established and maintained for one year, and which said high schools have been established and maintained under the provisions of chapter

397 of the Laws of 1905, as amended by chapter 333 of the Laws of 1907 and chapter 69 of the Laws of 1908, by a majority of all the votes cast on said proposition, said chapter 397 of the Laws of 1905, as amended by chapter 333 of the Laws of 1907 and by chapter 69 of the Laws of 1908, shall be in full force and effect from and after the publication of this act in all such counties without again submitting the question to a vote of the electors; provided, however, this act shall not apply to counties where the proposition was resubmitted under chapter 69 of the Session Laws of 1908 and rejected." (5) Chapter 215 of the Laws of 1909 (§ 1, Gen. Stat. 1909, § 7807), which declares that "it shall be the duty of the county treasurer of every county in the state of Kansas to promptly pay over and distribute on demand all moneys now in his hands or which may hereafter come into his hands by reason of any tax levy made by any county, city, township or school district, to the treasurer of the city, township or school district, for the use and benefit of which it was collected, under the provisions of chapter 397 of the Laws of 1905, as amended by chapter 333 of the Laws of 1907 and by chapter 69 of the Laws of 1908."

It is contended that the high school for the support of which this tax was levied was in existence before the passage of the Barnes law, and so was not established and maintained under the provisions of that act, as required to bring it within the terms of chapter 210 of the Laws of 1909. Concerning this matter the answer alleges:

"High schools were not being maintained in Marshall county under the provisions of said law at the time House Bill No. 313, entitled 'An act concerning high schools,' was enacted by the legislature of the state of Kansas at the session of 1909, for the reason that said law was never adopted in said county."

This allegation conveys an implication that while high schools may in fact have been maintained in ac-

cordance with the provisions of that law, they were not as a legal proposition maintained under it, because it was not in effect in that county. Referring to the agreed statement of facts (paragraphs 8 and 14), it appears that the county commissioners, assuming to act under and by virtue of the Barnes law, levied the taxes in question for the support of this high school, and that the district did maintain the school for one year prior to the passage of chapter 210 of the Laws of 1909, with courses of instruction as provided in the Barnes law. It is therefore found that this school, with others in that county named in the agreed statement, are within the purview of that chapter.

The question of adopting the provisions of the Barnes law was submitted to the voters of Marshall county at the general election of 1906, and a majority of the votes cast upon the proposition were for its adoption, but not a majority of all the votes cast at the election, and so the proposition failed. (*Humboldt v. Klein,* 79 Kan. 209.) The local authorities in that county, however, and in several other counties where the same result had occurred, supposing that the Barnes law had been adopted by such a vote, and assuming to act under its provisions, levied and collected taxes for high schools accordingly. In this situation, with the taxes in the treasury, and the schools in operation relying upon this revenue, the legislature at the session of 1909 passed the two acts, chapters 210 and 215 of that year. The purpose of these enactments is plain; it was to relieve the situation. They were curative in their nature, and were designed to make available the funds raised by taxation to support the schools established and maintained in reliance upon the Barnes law, upon the supposition that it had been adopted. That the authorities of Marshall county believed the Barnes law to be in force, and levied the taxes upon that assumption, appears, as we have seen, from the agreed statement, and it is a matter of common knowledge that by

an erroneous interpretation of the section providing
for a vote upon the adoption of the law the same action
was taken in other counties, which action, it appears,
was supported by an opinion of the superintendent of
instruction.

Two main questions are presented: (1) Whether
the legislature had power to make the funds so levied
for the support of high schools available for the use for
which they were collected, and (2) whether chapters
210 and 215 of the Laws of 1909 accomplish this purpose.
The act of 1907, referred to in chapter 210, only amends
one section relating to the manner of making the levy,
and does not affect the questions. The act of 1908,
also referred to in chapter 210, provided that the vote
of a majority voting upon the proposition should be
sufficient to adopt the Barnes law in any county. Now
it is argued that as chapter 210 refers to action taken
under the original act of 1905, *as amended* by the act
of 1908, it is not in force in counties where an election
had not been held under the last-named act. If this
interpretation be correct, chapter 210 has no effect, for
the act of 1908 secured the only end which it is claimed
chapter 210 accomplishes. Counsel for the defendant
say that their interpretation "gives effect to chapter 210
and makes it a definite and validating act of any elec-
tions that might have been *irregularly held* after the
amendment of the law in 1908," but there is no sug-
gestion that any such situation existed. On the other
hand, the embarrassment arising from proceedings
taken upon the supposition that the Barnes law had
been adopted by a majority of those voting upon the
proposition was generally known, and we are bound
to suppose that it was this condition, rather than the
supposition that an irregular election might possibly
have been held under the act of 1908, which stimulated
legislative action. This view is confirmed by the pass-
age soon after, at the same session, of chapter 215,
which provides that moneys collected under the Barnes

law, as amended in 1907 and 1908, shall be paid over to the districts for which it was collected. If this refers only to moneys collected for high schools in counties where the law had been adopted after the act of 1908 took effect it is also useless, for in such case the duty of disbursement could not be doubted and further legislation was not needed. Chapters 210 and 215 relate to the same subject, arise out of the same general situation, were designed to reach the same general end, and should be construed together as one law. (*In re Hall, Petitioner,* 38 Kan. 670; *Telegraph Co. v. Austin,* 67 Kan. 208.)

The legislative purpose in the passage of chapters 210 and 215, to make the provisions of the Barnes law effective in the counties where a majority of those voting upon the proposition had voted for its adoption, is apparent. This intent, when ascertained, is the cardinal canon of construction to which all mere rules of interpretation are subordinate. (*The State v. Bancroft,* 22 Kan. 170.) The recital in these chapters of the later acts amending the original act of 1905 is descriptive, and does not limit the application of these laws to elections held subsequent to the last amendment. So to hold would defeat the clear and obvious legislative purpose in their enactment.

It is contended that chapter 210 violates section 17 of article 2 of the constitution, requiring the uniform operation of general laws and forbidding the enactment of a special law where a general law can be made applicable. The argument is that if the act be construed to apply to elections held before the amendment of 1908 it will result in an arbitrary and capricious classification. The act includes the counties wherein the Barnes law had been adopted by a majority of those voting upon the proposition, in which high schools had been maintained for one year. Counties which had adopted the law by a majority vote of all the electors are not within its terms, and counties

which had rejected the proposition to adopt were excluded by the proviso. The conditions of this classification were the adoption of the Barnes law by a majority vote of those voting on the proposition and the maintenance of a high school for one year. These conditions applied to a large number of counties, resulting in the maintenance of high schools and the exercise of the power of taxation upon the county therefor upon the assumption that the law had been duly adopted. The conditions were real, and not ficitious, and the classification was not arbitrary, but reasonable.

It is competent for the legislature to adapt a law, general in its nature, to a class, but such classification must be natural and not an arbitrary or fictitious one. An act to have uniform operation throughout the state need not affect every individual, every class or every community alike. (*Rambo v. Larrabee,* 67 Kan. 634.) It is true that, construing chapter 210 as applying to counties where elections had already been held, other counties can not come into the class; and this it is said prevents the uniform operation required by the constitution. This objection, however, is met by the opinion in *Cole v. Dorr,* 80 Kan. 251, wherein was quoted with approval the language of the supreme court of Minnesota holding that when a statute is remedial or curative the classification is legal if it includes all the subjects which are affected by the condition which it is sought to remedy or the evils it is sought to cure.

Curative legislation necessarily forms an exception to the general rule that classifications can not be based solely on conditions already existing, for the object of such a statute is to effect a remedy for present conditions. (*Leavenworth v. Water Co.,* 69 Kan. 82; *Cole v. Dorr,* supra.) A curative act of the legislature may validate any action of the voters of a county or of its authorities which the legislature had power under the constitution to authorize in the first instance. (*Shepherd v. Kansas City,* 81 Kan. 369.) If the conditions

are such as to warrant legislative action, and the statute is made to apply wherever the conditions exist, the constitution interposes no barrier to the passage of a curative act, provided the action validated thereby might have been previously authorized by the legislature. (*The Iowa Railroad Land Co. v. Soper,* 39 Iowa, 112; *Kimball v. The Town of Rosendale,* 42 Wis. 407; *The State, Bonney v. Collector of Bridgewater,* 31 N. J. Law, 133; *Hewitt's Appeal,* 88 Pa. St. 55.)

In *State ex rel. v. Brown,* 97 Minn. 402, it appeared that successive statutes had been passed at the same legislative session legalizing the issuance of bonds for building schoolhouses. The original enabling act required a two-thirds majority of all the voters of the city voting at the election. This majority was not given at the election, although there was a majority of two-thirds of the votes cast upon the proposition. The curative acts provided that the bonds should be issued and sold. In an action of mandamus to compel the issuance of the bonds as provided in the curative acts, the court said:

"The legislature of 1905, influenced undoubtedly by the fact that the wishes of the people of Minneapolis has been clearly expressed in favor of the issuance of the bonds, and with full knowledge of the conditions which rendered the issue of such bonds desirable and necessary, removed the restriction imposed by the act of 1903, and legalized and authorized the issue of the bonds without compliance with one of the conditions imposed by the original enabling statute. . . . Neither upon principle nor precedent should these statutes be treated as special legislation. They are remedial, curative acts, and apply to all subjects of legislation which are within the conditions and subject to the evils sought to be remedied." (pp. 403, 404.)

It was within the power of the legislature to provide for high schools and their maintenance by taxes to be levied in the various counties without submitting the question to a vote. (*The State v. Freeman,* 61 Kan. 90.) It also had the right to make the establishment

of such schools conditional upon a vote. (*The State v. Bentley*, 80 Kan. 227.) It could require a majority of all the votes cast at an election as a condition precedent to the operation of the law in any county, or it could make it effective upon a different condition. Having the power in the first instance to establish such schools and to enforce taxation to maintain them, with or without such preliminary vote, the legislature could, within the principle already stated, by the enactment of curative statutes after such schools had been established require that they should be so maintained, although the majority of votes at the referendum was less than the original enabling act required.

It is also insisted that chapter 210 of the Laws of 1909 violates section 16 of article 2 of the constitution forbidding amendments unless the new act contain the section amended. It is said that the Barnes law was amended because the condition prescribed by its terms for its adoption in any county was changed by the new law. The purpose of this constitutional restriction was to prevent uncertainty and confusion which might arise from adding or striking out words and making additions or substitutions without rewriting the section as amended. (*The State, ex. rel., v. Cross*, 38 Kan. 696; 1 Lewis' Suth. Stat. Const., 2d ed., § 230.) It does not apply to amendments by implication (*Parker-Washington Co. v. Kansas City*, 73 Kan. 722; *Bank v. Pearce*, 76 Kan. 408), nor where the later act declares the meaning of the earlier one, or where by reference a former act is extended to cover subjects not within its terms (*The State v. Shawnee County*, ante, p. 199). And it has no application when the new statute is complete in itself. The objection now made might have been urged with equal force to the curative act under consideration in *Cole v. Dorr*, 80 Kan. 251. The statute providing for a commission form of government had not been adopted in Wichita in the manner provided by its terms, and yet it was held that the remedial statute

was effective, and that the law was thereby in force. So in other cases where curative acts have been considered in this court. It is difficult to see how statutes of this nature, when designed to validate proceedings taken under the assumed authority of a statute, but where its provisions have not been followed, can be made effective if this contention is to prevail. Considering the nature and purpose of curative legislation, and the reason for the constitutional inhibition, it is held that it does not apply to statutes like those now under consideration.    (1 Lewis' Suth. Stat. Const., 2d ed., §§ 239, 240.)

The further claim is made that chapter 215 of the Laws of 1909 is unconstitutional because it confiscates the taxpayer's money. It is said that payments of this tax were made without any authority of law for their collection; that some payments were made under protest; that the money remains that of the taxpayer; and that in this situation the attempted legislative appropriation is without due process of law. In considering this question it must be remembered, as before stated, that this chapter is only a part of the legislation, and is to be considered with chapter 210 of the same session as part of one act to accomplish a proper legislative purpose. If legislation is effective to legalize actions which might have been authorized in the first instance, the curative power may validate it afterward if vested rights are not disturbed. If the statute can be made operative to validate and enforce proceedings to compel the payment of taxes, it can be made effectual to distribute taxes already paid. In *The Iowa Railroad Land Co. v. Soper*, 39 Iowa, 112, it was held:

"But the legalizing of a tax, which but for the legalizing act was invalid and not capable of being enforced, does not interfere with any vested right of the taxpayer. It is argued that before the passage of the curative act the plaintiff had a right of action to recover back the illegal taxes paid, and that this is a vested

30—83 KAN.

right. It is no more a vested right than in case the plaintiff had not paid the taxes. He would in such case have as good grounds for resisting payment as, after payment, he could have to recover the money paid. . . . The statute has created a liability to pay where none existed before its passage, and this is so whether the act authorizing the tax levies be passed prior thereto or is an act legalizing a tax previously levied. In either case the power of the general assembly to pass the law is the same. If it has no power to legalize a tax already levied without authority it has no power to confer the authority in the first instance." (p. 121.)

Reference is made in the brief of counsel to the opinion in *A. T. & S. F. Rld. Co. v. Woodcock, Treasurer,* 18 Kan. 20. That decision was based mainly upon the fact that the tax in question there had not been levied in pursuance to a law stating the object of the tax, as the constitution requires. (Const., art. 11, § 4.) It was said that the tax was sustained only by the curative act, which failed to state the object. No such infirmity appears here. The original act clearly states the object, chapter 210 declared the conditions upon which that act became effective in any county, and chapter 215 required the application of the taxes to the object specified. Some expressions in that opinion and in the opinion in *A. & N. Rld. Co. v. Maquilkin, Sheriff,* 12 Kan. 301, considered apart from the facts involved, indicate a possible view of legislative power in relation to curative statutes not apparent in recent decisions of this court, and not controlling in the situation now presented.

Other questions suggested in the briefs appear to be only incidental to the propositions decided herein and in *Cole v. Dorr,* 80 Kan. 251, and other opinions of this court which have been cited.

A peremptory writ of mandamus is allowed.

The State v. Pauley.

GRAVES, J. (dissenting) : I am unable to concur in the foregoing opinion. Chapter 210 of the Laws of 1909, which is claimed to make the tax in question valid, has never in my view applied to Marshall county. That statute by its terms limits the counties to which, and the conditions under which, it shall apply. It does not apply except in counties where the original Barnes law was voted upon and lost for the reason that, although it received a majority of the votes cast upon that proposition, it did not receive a majority of the votes cast at the election, which was necessary; and it only applies to such counties when the people, under the erroneous belief that the law was legally adopted by such vote, proceeded to establish and maintain high schools under the provision of such law for one year. Chapter 210 can have no force or effect in any county where these conditions do not exist, and yet none of them appears to have existed in Marshall county at the time this tax was levied. If high schools were in existence in that county, it does not appear that they were either established or maintained under the provisions of this Barnes law, but rather in spite of them and in accordance with an educational plan adopted by the people before the Barnes act was voted upon. The people rejected the Barnes act when it was fairly before them and they had an opportunity to adopt it.

The legislature evidently intended to submit the question of levying this tax to the people for their acceptance or rejection. So far as Marshall county is concerned, they have declined to accept it. In my judgment, the action of the county commissioners in making this levy was without authority, and the taxpayers should not be compelled by mandamus to pay it. The writ should be denied.