Thomas A. Pollock, *Appellee*, v. The City of
Kansas City et al., *Appellants.*

No. 17,690.

SYLLABUS BY THE COURT.

1. Injunction—*Special Assessments—Street Paving—Parties.*
Under section 265 of the civil code, a property owner not
affected by the special assessments for street paving, but
whose burdens as a taxpayer will be increased by reason of
paving the intersections, may maintain a suit to enjoin the
city from proceeding to let an unauthorized contract for pave-
ment.

2. Paving Streets—*Void Petition.* Under section 1009 of the
General Statutes of 1909, a paving petition which used words
designating one specific kind of material, patented and con-
trolled by only one company and furnished to bidders at only
one price, in effect named the brand of material to be used,
and was void.

3. —— *Validated by Legislature—Curative Act—Classifica-
tion.* The legislature had the power to validate petitions of
this kind already on file, and by chapter 91 of the Laws of
1911 did validate the one in question.

Appeal from Wyandotte district court, division No. 1.
Opinion filed May 11, 1912. Reversed.

*R. J. Higgins,* and *Nathan Cree,* for appellant Kansas
City; *James M. Head,* and *W. C. Culbertson,* of counsel.

*George R. Allen,* and *J. W. Dana,* for appellant Kan-
sas Bitulithic Company.

*Edward C. Little,* and *Thomas A. Pollock,* for the
appellee.

The opinion of the court was delivered by

West, J.: The voluminous record in this case pre-
sents one question: Were the demurrers to the
amended petition rightfully overruled? The suit was
brought by a taxpayer of Kansas City, Kan., to enjoin
the city from entering into a contract for the paving
of certain streets, who amended his petition so as to

cover the pavement on one street only. The controlling questions involved in the ruling are, whether the plaintiff can maintain the suit under section 265 of the code, and if so, whether the proviso of section 1009 of the General Statutes of 1909, that the petition shall state the kind of material to be used but not the brand of material nor the name of the manufacturer thereof, was violated by the paving petition in this case, and if so, whether the defect was cured by chapter 91 of the Laws of 1911.

Section 265 of the code provides that an injunction in such case may be brought by "any number of persons whose property is or may be affected by a tax or assessment so levied, or whose burdens as taxpayers may be increased by the threatened unauthorized contract or act." The plaintiff owned no property subject to special assessment for the contemplated paving, but being a taxpayer in the city, and such paving when laid necessitating the paving of intersections, his right to sue depends upon whether his burden as such general taxpayer would be increased by the paving in question. Such increase was alleged, the paving of a street implies the pavement of the intersections, and it is impossible to see how the contemplated work could fail to add to the plaintiff's burden as a taxpayer. The former statute provided that such suit could be brought by "any number of persons whose property is affected by a tax or assessment so levied" (Old Civ. Code, § 253, Gen. Stat. 1901, § 4700), the change by the amendment in this respect being that now such action may be brought by those whose property is thus affected or those whose burdens as taxpayers may be increased (Civ. Code, § 265). This amendment was discussed in *Gas Co. v. Railway Co.*, 74 Kan. 661, 87 Pac. 883, in *Bunker v. Hutchinson*, 74 Kan. 651, 87 Pac. 884, and in *Meistrell v. Ellis County*, 76 Kan. 319, 91 Pac. 65. In the latter case it was said:

"The act named expanded the remedy of injunction, and gives the taxpayer a right of action against a

public officer or board to enjoin them from entering into any contract or doing any unauthorized act that. might result ultimately in the creation of a burden or the levying of a tax against his property." (p. 323.)

The foregoing decisions were referred to with approval in *Makins v. Dickinson County*, 77 Kan. 861,. 95 Pac. 394.

If, as argued by the defendants, the right is restricted to one whose property is affected by the special assessments, then the work of the legislature in making the amendment appears to have been one of supererogation. We think there is no doubt, and we therefore hold, that the plaintiff, being a general taxpayer in the city, has the right to maintain the suit.

The petition for the improvement named bitulithic pavement. The amended petition alleges that this is a particular brand and kind, that the word "bitulithic" as used in the expression "bitulithic pavement" is a trade-mark for one particular kind of patented bituminous concrete pavement, duly registered as a trade-mark under the copyright and trade-mark laws of the United States. That bitulithic pavement is now and has been for many years well known to civil engineers, to persons engaged in the business of street. paving and to the public generally as controlled and produced only by Warren Brothers Company and held. in monopoly and control by such company exclusively; that such pavement could be obtained only from the one source by the payment of a royalty, and that other bituminous concrete pavements equal in all respects to this, and as to which there could be full and free competition as to price, could have been procured and constructed for a less sum per square yard, and that better pavement of bituminous concrete, as to which there could be full and free competition, could have been procured and constructed for $2 or less per yard. That in response to the advertisements for bids only one bid was received and that for $2 a square yard, there being no competition and no bidder except one com--

pany. In short, the amended petition alleged in sub-stance that bitulithic pavement as petitioned for and submitted for bids was one specific and distinct kind of pavement, controlled by and procured from only one company, and that competition was therefore rendered impossible. Of course the demurrers, for the purpose of this case, admit the truth of these allegations. It remains, therefore, to consider and determine whether, in view of these allegations, the petition for the pave-ment named the brand of the material to be used, or the manufacturer thereof, within the meaning of the statute.

It is contended by the defendants that as the petition may state the kind of material and not the brand, the one used in this case was proper. In a former statute (Gen. Stat. 1901, § 730) it was required that the petition state the width of the paving and the specific description of the material to be used, and it is argued that when the change was made in the statute the legislature intended that the petition should be so worded as to promote competition and not confine the pavement to one particular brand. If there were va-rious kinds of bitulithic pavement which could be pro-cured at different prices it is quite true that the words "bitulithic pavement" would not contravene the re-quirements of the statute and the intention of the legis-lature, but under the allegations of the amended petition the words had a well defined and well known meaning, confined to only one kind of paving material absolutely controlled by one company, so that the mat-ter of competition was entirely eliminated. It is im-possible to conceive, in the face of the assumed truth of these allegations, how the language and intent of the legislature could be more positively avoided and de-feated. The fact that the contract was to be let to the Kansas Bitulithic Company makes no difference, for under the allegations it could procure its material from the one source only and at the one price only.

The requirement to name the kind of material and the prohibition upon naming the brand indicate plainly an intention that the petition shall indicate whether the pavement shall be of brick, asphalt or other kind of material, but that it shall not be confined to one particular brand for the reason that such brand is presumed to be controlled by only one concern and thereby competition could not be possible. The word "brand" derivatively has reference to burning, and in many cases signifies a distinctive mark placed on objects by use of a hot iron. The verb has been judicially defined as meaning to stamp or to mark, as by a stencil, plate or chisel. Also the noun as indicating some figure or device burned on an animal by a hot iron. (1 Words and Phrases, p. 858.) Of course, it can make no difference what sort of brand or identification may be used, and if the words describe and distinguish one particular kind of material only, which can be procured from one party and at one price only, this is to all intents and purposes as effective as if branded into the material or stenciled thereon. It is insisted that the Warren Brothers Company filed with the city an agreement under which it offered to all bidders the use of its patents together with an offer to furnish the material and necessary skilled supervision for $1.35 a square yard, thereby placing all bidders on an equal footing. The offer, set out as part of an exhibit to the amended petition, was dated June 29, 1907, about three years before the petition was acted upon, and recited that as it was deemed advisable by the proper authorities that bids be received to pave certain streets with "Warren's Bitulithic Pavement" the company proposing and agreeing to furnish any bidder to whom a contract might be awarded certain material, with the free license to use the same, necessary to lay such pavement. The amount per square yard was left blank, likewise the name of the city and the

14—87 KAN.

location of the plant. But as it appears to be conceded that the price per yard.to be charged by the company was $1.35 and that the total price of the paving was $2, the margin of possible competition, had there been competitive bidders, is so small as to be negligible even if the proposal in the form claimed by the company had been on file.

The pleading alleges that the specifications were approved by the commissioners September 15, 1910, and not filed in the office of the city clerk until March 30, 1911; that on the — day of March, 1911, the city received in response to an advertisement a bid from the Kansas Bitulithic Company for certain paving in accordance with certain plans and specifications therefor on file in the office of the city clerk; and that on March 21, 1911, the board of commissioners considered and accepted such bid on condition that the bidder would enter into a written contract, the execution of which contract is sought to be enjoined. It is insisted that the amended petition nowhere alleges nor admits that the paving petition was ever spread upon the journal of the council or commission, therefore the curative act can not apply. The provision of the statute is that "in cities of the first class having a population of over 25,000 no resolution to pave . . . any street . . . shall be valid unless a petition asking such improvement has been ordered spread upon the journal." (Gen. Stat. 1909, § 1009.)

From the facts alleged, that the petition was circulated and signed, that bids were advertised for, that a contract was about to be let, that bonds were about to be issued to pay for the pavement, and that the board of commissioners "did adopt and on July, 1910, caused to be published a certain resolution providing for the paving," and "did on September 15, 1910, enact an ordinance ordering and providing" for the paving, it must be presumed that the officers did their duty and that the resolution was spread upon the

journal.    (*Kindley v. Rogers,* 85 Kan. 645, 118 Pac.
1037.)

The language of the curative act is as follows:

"But nothing herein contained shall be held to in-
validate any petition heretofore ordered spread upon
the journal of the council or commissioners in the man-
ner provided by law and all such petitions shall be
held valid."    (Laws 1911, ch. 91, § 1.)

The defendants insist that this completely cures the
paving petition in this case even if it did name the
brand of material, while the plaintiff urges that the
words "in the manner provided by law" have reference
to the legality of the petition itself and not to the man-
ner of its being spread upon the journal.    Grammat-
ically the words appear to qualify the act of spreading
upon the journal and not the character of the petition.
It may be that when this curative act was framed its
author had no desire to announce from the house tops
the real purpose of the closing language of the pro-
viso.    But we are not relieved from the duty of giving
to the words used their ordinary and natural interpre-
tation.    On the assumption, however, that this was the
intention of the act the plaintiff contends that the real
object was to enable the city to increase the expense of
street improvements from $200,000 to $300,000 on con-
dition that all paving petitions thereafter should state
the kind of paving in generic terms and not specify the
particular character of the material or name of the
manufacturer; that this proviso in turn was limited so
that it could not have retroactive effect or invalidate
any valid petition ordered spread upon the journal in
the manner provided by law; that it was not intended
to make good any void petitions or proceedings or pro-
ceedings which were void because based upon void peti-
tions.    We are unable so to interpret the wording of the
act.    The object appears to have been to provide that
in the future petitions should describe the kind of pave-
ment in general and not in specific terms, but that

nothing in the amendment should invalidate any petition already properly ordered spread upon the journal, and that all petitions should thereby be validated if they had been spread upon the journal in the manner provided by law. It is true the law does not provide the manner of spreading upon the journal, but doubtless the usual and proper manner would be by motion or resolution acted upon by the council or commission, and not the mere unauthorized act of the clerk or some employee or outsider. "Any petition heretofore ordered spread upon the journal" (Laws 1911, ch. 91, § 1) would include any petition actually but not properly or rightfully ordered spread, while spread "in the manner provided by law" restricts the proviso to such petitions as have been by proper action of the council or commission ordered spread upon the journal.

It is insisted that with this construction the act violates the constitution in that the title does not indicate curative intention and that the power to validate a particular paving petition is inherently judicial and not legislative. Also, that it is bad as special legislation, and that it is not within the power of the legislature to make good that which it could not have originally provided for. On the last proposition *Salt Co. v. Hutchinson,* 72 Kan. 99, 82 Pac. 721, is cited. It was there held that the mayor and council, and not the petitioners, must determine the matter of street improvements, and it was suggested in the opinion that a statute delegating legislative powers to the petitioners would be unconstitutional, but we know of no reason why the legislature might not authorize the council to order a pavement upon a petition designating the specific kind of material to be used. This would not give the petitioners legislative power to make street improvements, but would simply give them a right to say what material should be used to pave streets in front of their property, the major portion of the expense of which they must bear. Under the rule that what can be

originally authorized can be validated by a curative act, we think this proviso was within the legislative power and constitutional. (*Haggart v. Kansas City,* 77 Kan. 798, 94 Pac. 789.)

It is forcibly suggested that if the paving petition in this case was originally void the legislature could not, by a subsequent enactment, breathe legal life into it, and decisions are cited to the effect that only irregularity and not invalidity can be cured. But, as said in *Haggart v. Kansas City,* supra, on rehearing:

"It is true that the statute gives property owners in cities of the first class the privilege of designating the kind of material to be used. The legislature might, however, have refused this privilege in the beginning, and, since it could have done this, it could cure a proceeding that was defective because one kind of material was used instead of another." (p. 799.)

In a reply brief the plaintiff raises the question that the proviso is a special act conferring corporate power and therefore void under section 1 of article 12 of the constitution. The section amended applied only to cities having a pouplation of over 65,000. While the section and amended section were so drawn that other cities reaching the required population might come within the provision of the act, still at the time of the amendment Kansas City was the only city in the state having 65,000 inhabitants. The argument that this conflicts with the provision that "the legislature shall pass no special act conferring corporate powers" (Const. art. 12, § 1) is met by the fact that this court has adopted the holding that curative acts are not within the general rule regarding special legislation. In *Leavenworth v. Water Co.,* 69 Kan. 82, 76 Pac. 451, an act validating certain ordinances, general in terms and including all cities of the first class, was attacked as special legislation conferring corporate powers, but it was upheld although applicable only to existing conditions with no possibility of future operation. In *Cole v. Dorr,* 80 Kan. 251, 101 Pac. 1016, the statute in ques-

tion, which could apply only to certain cities in which irregular elections had already been held, was upheld. In discussing the claim that it was special legislation it was said:

"But a curative act is necessarily of that character. It operates only on conditions already existing. . . . Therefore whenever it relates to a subject concerning which special legislation is forbidden it is void if subjected to the ordinary test, as some courts have held that it must be. Other courts, however, recognize an exception arising from the nature of the case." (p. 259.)

The decision then quotes from *State ex rel. v. Brown,* 97 Minn. 402, 415, 106 N. W. 477:

" 'Necessarily this class forms an exception to the general rule that classification can not be based upon existing conditions alone. The very object of the statute is to remedy a present condition, and if possible avoid its repetition.' " (p. 259.)

This was followed by *The State v. Pauley,* 83 Kan. 456, 112 Pac. 141, the case involving the Barnes high-school law affecting only certain counties, it being there said:

"Curative legislation necessarily forms an exception to the general rule that classifications can not be based solely on conditions already existing, for the object of such a statute is to effect a remedy for present conditions." (p. 462.)

Section 1009 of the General Statutes of 1909 directed what should be contained in paving petitions circulated in cities of over 25,000. The act of 1911 (Laws 1911, ch. 91) amends section 1180 of the General Statutes of 1909 (fixing the limit of paving expenditures in cities of over 65,000), prescribes the limit of expenditure in cities of over 75,000, and prescribes what paving petitions in such cities shall and shall not set forth. The act provides that nothing therein contained shall be held to invalidate any petition theretofore ordered spread upon the journal in the manner provided by law

and expressly provides that "all such petitions shall be held valid." This clause is entirely curative in character and the court is disposed to apply the rule thus repeatedly announced and hold that it does not contravene the constitutional prohibition.

The defect in the paving petition having been thus cured the amended petition failed to state a cause of action and the judgment overruling the demurrers is reversed.

WEST, J. (dissenting) : I can not agree that a curative act is outside the purview of the constitution or that it forms an exception to the general rule. It is not a question of classification. It is the merest and plainest question of obedience to the supreme law commanding that "the legislature shall pass no special act conferring corporate powers." (Const. Art. 12, § 1.) That the proviso is special and authorizes the city to proceed with improvements otherwise impossible can not be questioned. When the convention framed this section and the people ratified it, if they meant that the legislature should pass no special act conferring corporate powers except curative acts there was no reason or excuse for not saying so. That it was not said is sufficient ground for our refusing to add such an exception.

Beginning with *Atchison v. Bartholow*, 4 Kan. 124, a most thorough and convincing decision, it has been uniformly held that the provision in question is binding upon the legislature, abundant reasons being given in this and other decisions for its adoption and enforcement. (*National Bank v. City of Iola*, 9 Kan. 689; *Gilmore v. Norton*, 10 Kan. 491; *City of Council Grove*, 20 Kan. 619; *The State, ex rel., v. Lawrence Bridge Co.*, 22 Kan. 438; *Gray v. Crockett*, 30 Kan. 138, 1 Pac. 50; *City of Topeka v. Gillett*, 32 Kan. 431, 4 Pac. 800; *The State v. Downs*, 60 Kan. 788, 57 Pac. 962; *Davenport v. Ham*, 72 Kan. 179, 83 Pac. 398.) Never until the de-

cision in *Leavenworth v. Water Co.*, 69 Kan. 82, 76 Pac. 451, was any attempt made to distinguish between curative and other acts, and the only subsequent instances are those found in *Cole v. Dorr*, 80 Kan. 251, 101 Pac. 1016, and *The State v. Pauley*, 83 Kan. 456, 112 Pac. 141. In the Leavenworth case the present question did not arise because the act was general in form and in terms. In the Pauley case no such question was involved, the act there referring only to counties which, as repeatedly held by this court, are not corporations but only quasi corporations, and therefore not within article 12 of the constitution. In *Cole v. Dorr*, the act in terms covered all cities of the first class which had theretofore adopted a commission form of government by a majority vote of the electors voting. It does not appear in the opinion whether more than one city was in fact affected or not, but assuming that only one was affected it is plain to be seen that the decision turned on the question of classification based not on the condition in one city but on present as distinguished from future conditions regardless of the number of municipalities involved. The opinion on which the decision is based, *State ex rel. v. Brown*, 97 Minn. 402, 106 N. W. 477, was founded entirely on the question of classification, that opinion expressly stating that "the only serious question is whether the basis of classification is proper and reasonable." (p. 405.)

It is familiar doctrine that the legislature may cure that which it could have originally done, but it is equally familiar that it can not by a curative act do that which it had no power to do in the first instance.

"That the legislature can do indirectly what it can not do directly seems too preposterous for argument." (*Heacock v. Sullivan*, 70 Kan. 750, 754, 79 Pac. 659.)

"It is not competent for the legislature by a curative act to validate proceedings which were originally void for want of jurisdiction." (*The State v. Cipra*, 71 Kan. 714, 715, 81 Pac. 488.)

In the *Town of Enterprise et al. v. State, ex rel.*, 29 Fla. 128, 10 South. 740, it was held that the legislature could not by a curative act validate the incorporation of a town, for the reason that the constitution forbade the creation of a municipal corporation by special act, quoting (p. 148) and following *Stange et al. v. City of Dubuque*, 62 Iowa, 303, 17 N. W. 518, where it was said:

"As the legislature could not by special act, have authorized the city of Dubuque to pass the ordinance in question, it follows that it can not, after the passage of the ordinance, legalize it by special act. The legislature can not do indirectly what it is inhibited from doing directly." (p. 305.)

In *Rutten v. Paterson*, 73 N. J. Law, 467, 64 Atl. 573, a New Jersey statute passed to validate the proceedings of the commissioners previously appointed to divide cities into wards and to confirm their actions was held violative of the constitutional provision forbidding special and local acts regulating the internal affairs of cities. The decision was by Pitney, J., who said:

"It is therefore but reasonable to consider the act of 1906 as applying to Paterson alone, as counsel admits to be the case. This being so, it seems to me to necessarily result that the act is a special and local law within the constitutional interdict. I do not at all question the constitutional power of the legislature to pass validating acts in this class of cases. I have no doubt they might validate anything that they might authorize, and have no doubt of their power to oblige the mayor to appoint commissioners for the purpose of dividing the city into wards, even without any petition. But the legislative power to validate defective proceedings does not extend to authorize them to employ a validating act as a means of regulating the internal affairs of cities, if such act be special and local." (p. 476.)

In *Williams v. Boynton*, 147 N. Y. 426, 42 N. E. 184, an act to validate an illegal and unauthorized resolution of a board of supervisors locating or changing a county seat was held to be a local act in violation of a

constitutional provision prohibiting the passing of a local law in cases of locating or changing the county seat, and as an attempt to do indirectly what could not be done directly by the legislature. The supreme court of Wisconsin, in *Cawker v. Central V. P. Co.*, 140 Wis. 25, 121 N. W. 888, in accordance with a long line of prior decisions struck down an act purporting to validate certain classes of paving contracts theretofore made by "any municipal corporation of the first class" (p. 28), which in fact applied only to Milwaukee, as a special law amending its charter in violation of the constitution forbidding the enactment of any special law to amend the charter of a city.

One of the decisions relied upon by the Minnesota court in the Brown case (97 Minn. 402, 422, 106 N. W. 477) is *Read v. Plattsmouth*, 107 U. S. 568. A very slight examination of the latter discloses that a very different question from the one now under consideration was involved. A city, without authority, issued bonds for a high-school building. The bonds were sold and the proceeds applied. The legislature legalized the proceedings of the city by a special act and by another validated the tax levy and the bonds. The constitutional provision was exactly the same as ours. In an action on overdue coupons the plaintiff proved that he bought them for full value without notice of any informality in their issue. There was no evidence offered in their defense and the court instructed a verdict for the defendant. The plaintiff excepted and assigned error upon the ruling. The real question was, whether a *bona fide* purchaser for value could be defeated in an action without any evidence, simply because of the validating acts. It was said in the opinion:

"It is not a special act conferring corporate power; it is merely a special act taking away from the corporation the power to interpose an unconscionable defence against a just claim, and to avoid an obligation to pay an equivalent for public benefits, which it has continued to enjoy." (p. 577.)

This decision, therefore, affords no support for the rule under consideration.

Cole v. Dorr, 80 Kan. 251, 259, 101 Pac. 1016, refers to Mason v. Spencer, County Clerk, 35 Kan. 512, 11 Pac. 402, as having settled the question.. The question settled by the Mason case was this: An act provided that in any case when sewers had been theretofore constructed in any cities of the first class, by order of the mayor and council and not fully paid for the mayor and council should from time to time have authority to levy taxes to pay for them. Among the other complaints was one that the act conferred corporate powers upon certain cities only in violation of section 1 of article 12 of the constitution, but the court said:.

"In the present case, however, the act is not only general in its form and general in its terms, but it is made to apply to an entire class of cities, and a class as broad and general as any class for which any of the general laws for cities of the first class are enacted. It applies to all cities of the first class, and the time given for its operation is not limited; and any city of the first class coming within its terms may act under it, or not, as it chooses." (p. 519.)

A careful examination of the three cases in which the rule has been applied will demonstrate that neither involved the exact question now presented. Such examination will also disclose that the basis for the rule thus announced and applied was in each case one of classification and not one of exception by reason of curative nature from the ban upon special acts conferring corporate power. No one will pretend that the legislature could, by a special act, have empowered this one city to proceed with the pavement upon a void petition and no one can deny that by giving effect to the proviso in question the legislature is by judicial construction enabled to do indirectly precisely what it could not do directly. Curative acts are often necessary, and upon a mere question of classification I would be reluctant to regard them unfavorably. But here is a statute whose

title and purport do not indicate the place or purpose of this provision slipped in at the close, a provision which is the clearest possible conference of corporate power upon one city and one only. It probably escaped notice except by the draftsman of the bill, but it flies squarely into the teeth of section 1 of article 12 of the constitution and is as void as if of more pretentious length and of unconcealed location.

Dangerously loose notions regarding constitutional obligations seem to be entertained by many, some even manifesting impatience with the constitution itself and asserting that it is out of fashion and insufficient for modern needs, This makes it more than usually important that the courts yield and require willing and ready obedience to the supreme will of the people as expressed in that instrument.

MR. JUSTICE SMITH concurs in this dissent.

BENSON, J. (dissenting) : In my opinion chapter 91 of the Laws of 1911 is not curative. It consists solely of an amendment of section 2 of chapter 78 of the Laws of 1909 (Gen. Stat. 1909, § 1180), which prohibited cities affected by its provisions from entering into contracts for paving requiring aggregate expenditures of over $200,000. The amendment of 1911 increases the authorized expenditures to $300,000, and declares that petitions for paving shall not specify the particular character of the material or name of the manufacturer, and provides that "nothing herein contained shall be held to invalidate any petition heretofore ordered spread upon the journal . . . and all such petitions shall be held valid."

In the absence of anything in the title or body of the act indicating a different purpose it should be presumed that all of the sentence quoted above relates to the same subject, the last clause being added by way of emphasis and meaning only that all such petitions shall be held valid as though the act had not been passed.