THE STATE OF KANSAS v. B. F. CARTER.

No. 14,695. (86 Pac. 138.)

SYLLABUS BY THE COURT.

1. GENERAL STATUTES—*Authentication — Adoption — Evidence.* The compilation known as the General Statutes of 1897 not having been authenticated according to law, and not having been adopted by the legislature in a constitutional manner as ·a revision of the statutes, the matters embodied in it are not to be deemed the general statutes of Kansas; nor does such compilation afford *prima facie* evidence of the due passage and publication of the provisions, sections and chapters which it contains.

2. CONSTITUTIONAL LAW—*Amendment of a Law—Intoxicating Liquors.* In the compilation referred to section 8 of chapter 149, Laws of 1885, relating to the procuring of evidence concerning violations of the liquor laws and providing for proceedings against persons and property based upon such evidence, is arbitrarily divided into two parts, which are separately printed as section 49 and section 50 of chapter 101 of that work. Chapter 233 of the Laws of 1901 purports to amend section 49 of chapter 101, General Statutes of 1897, without intending or attempting to repeal that part of section 8 of chapter 149, Laws of 1885, embraced in section 50, and without embodying such part in the new section. *Held,* the amendatory act violates section 16 of article 2 of the constitution and is void.

Appeal from Wilson district court; LEANDER STILLWELL, judge. Opinion filed June 9, 1906. Reversed.

*C. C. Coleman,* attorney-general, and *E. D. Mikesell,* assistant attorney-general for Wilson county, for The State; *J. B. Wilson,* of counsel.

*S. S. Kirkpatrick,* and *C. W. Shinn,* for appellant.

The opinion of the court was delivered by

BURCH, J.: Appellant was convicted of a misdemeanor, in that he refused to obey a subpœna to give testimony concerning violations of the law prohibiting the manufacture and sale of intoxicating liquors. The case was tried upon an agreed statement of facts, in which the validity of the act prescribing punishment for such conduct was challenged, the point being that the legislature attempted to amend a part of a section without embodying the entire section as amended in the new act and without repealing a portion of the old section.

Section 8 of chapter 149, Laws of 1885, provides for investigations by the county attorney of violations of the liquor laws. It contemplates the subpœnaing of witnesses whom the county attorney may have reason to believe have knowledge or information of such violations, the taking of the testimony of such witnesses under oath, the reducing of such testimony to writing, the signing by the witnesses of their testimony when written down, the punishment of witnesses for contempt in case of their disobedience of any of the requirements laid upon them, the filing of the written testimony procured in the manner described in connection with criminal complaints or informations, and proceedings against offending persons and offending property based upon such written evidence.

In July, 1894, it was decided that this section is unconstitutional in so far as it attempts to confer on county attorneys power to commit witnesses for contempt. (*In re Sims, Petitioner,* 54 Kan. 1, 37 Pac. 135, 25 L. R. A. 110, 45 Am. St. Rep. 261.) The decision referred to affected no part of the act except the clause "and shall have power to punish any witness for con-

tempt for or on account of any disobedience of a subpœna, a refusal to be sworn or answer as a witness, or to sign his testimony." (Laws 1885, ch. 149, § 8.)

By chapter 136 of the Laws of 1897 the legislature accepted the bid of Mr. W. C. Webb to furnish the state an annotated compilation of its general statutes, and provided that such compilation should be made according to the rules prescribed by paragraph 7292 of the General Statutes of 1889, which reads as follows:

"In preparing the general statutes for publication, the commissioners may omit the words 'an act concerning,' or other equivalent words in the title to the several acts, substituting, in lieu thereof, the word 'of'; and also may omit the sections providing that such acts shall take effect from and after their publication in the statute-book, and, also, such repealing sections and clauses as they may deem proper; and may arrange the several subjects in such order as may be most convenient and easy of reference."

The act of 1897 required the Webb compilation to be examined and approved by the justices of the supreme court and by the attorney-general in the following manner:

"Before any copies of said statutes shall be received by the secretary of state and paid for by the state they shall be examined by the justices of the supreme court and the attorney-general, who shall, if they find such compilation contains all the laws of a general nature then in force, including all acts of such nature passed at the present session of the legislature, and that such compilation is properly and conveniently arranged and annotated, printed and bound in the manner stated in said proposal, and that each of said volumes is fully and properly indexed, certify such facts to the secretary of state." (§ 2.)

Section 4 of the same act reads:

"A copy of the certificates of the justices of the supreme court and attorney-general approving said compilation, together with a copy of this and the preceding sections of this act, shall be printed in each volume thereof, and the general statutes so compiled and approved shall thereafter be deemed and held to be the

general statutes of Kansas and shall be *prima facie* evidence in all courts in this state of the due passage and publication of any provision, section or chapter therein contained."

When the compilation was completed the justices of this court made a certificate as follows:

"Having made such examination of the General Statutes of 1897 as has been practicable in the limited time we have been able to devote to it without neglecting our judicial duties, (although we deem this a task which the legislature cannot lawfully impose on us,) we certify that so far as we are able to determine from such examination the accompanying compilation complies with the requirements of chapter 136 of the Laws of 1897, and that the work of the compiler appears to have been well and faithfully done. Witness our hands at Topeka this 30th day of October, 1897."

The attorney-general's certificate reads:

"I hereby certify that I have made examination of the General Statutes of 1897, and that so far as I am able to determine from such examination the accompanying compilation complies with the requirements of chapter 136 of the Laws of 1897, and that the work of the compiler appears to have been well and faithfully done. Witness my hand at Topeka this 30th day of October, 1897."

In the Webb compilation section 8 of chapter 149 of the Laws of 1885 was arbitrarily divided into two substantially equal parts, the first relating to the securing of written and signed statements from witnesses duly sworn, and the second to prosecutions based upon such statements. The first part was designated as section 49 of the compiler's chapter 101. The second part was labeled section 50 of the same chapter. In 1901 the legislature passed the act under consideration, which reads as follows:

"An act to amend section 49 of chapter 101 of the General Statutes of Kansas of 1897, relating to investigations of violations of the prohibitory law.

*"Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. That section 49 of chapter 101 of the General Statutes of Kansas of 1897 is hereby amended

so as to read as follows: Sec. 49. If the county attorney of any county shall be notified by an officer or other person of any violation of any of the provisions of this act, it shall be his duty forthwith diligently to inquire into the facts of such violation, and for such purpose he is hereby authorized and required to issue his subpœna for such person or persons as he may have reason to believe have any information or knowledge of such violation to appear before him, at a time and place designated in such subpœna, then and there to testify concerning any violations of this act; said subpœna shall be directed to the sheriff or any constable of the county, and shall be served and returned to such county attorney in the same manner as subpœnas are served and returned in criminal cases. Each witness shall be sworn by the county attorney to testify the truth, the whole truth, and nothing but the truth, and true answer make to all questions which may be propounded to him by such county attorney touching any violations of the provisions of this act or the act to which this is amendatory. The testimony of every such witness shall be reduced to writing and signed by such witness. For all purposes of this section, the county attorney is hereby authorized and empowered to administer oaths or affirmations to all witnesses. No person shall disclose any evidence so taken as hereinbefore authorized, or disclose the name of any person so subpœnaed or examined, except when lawfully required to testify as a witness in relation thereto, until the parties against whom complaint or information shall be filed by reason of such evidence have been arrested. Any disobedience of the subpœna hereinbefore authorized, or any refusal to be sworn as a witness, or any refusal to answer any pertinent and material question propounded by the county attorney pursuant to the provisions of this act, or any refusal of a witness to sign his testimony taken under the provisions of this act, or any violation of the requirement of secrecy imposed by this act, shall be a misdemeanor, and punishable as such.

"Sec. 2. This act shall take effect and be in force upon its publication in the official state paper." (Laws 1901, ch. 233.)

The constitution contains the following provision:

"No bill shall contain more than one subject, which

shall be clearly expressed in its title, and no law shall be revived or amended, unless the new act contain the entire act revived, or the section or sections amended, and the section or sections so amended shall be repealed." (Art. 2, § 16; Gen. Stat. 1901, § 134.)

Until found by the justices of the supreme court and the attorney-general to contain all the laws of a general nature at the time in force, including all acts of such nature passed at the session of 1897, until found by those officers to be properly and conveniently arranged, annotated and bound in the manner stated in the proposal, and to be fully and properly indexed, and until the facts so found were duly certified to the secretary of state, the matter contained in the compilation in question could not be deemed to be the general statutes of Kansas or be *prima facie* evidence of the due passage and publication of the provisions, sections and chapters it contained. No such findings are disclosed by the certificate of the justices quoted above, and their certificate does not pretend to cover the required facts. The justices, being under no obligation in respect to the matter, merely made such an examination as was practicable in the limited time they were able to devote to it without neglecting judicial duties. So far as they were able to determine from such examination the compilation appeared to meet the legislative requirement. Whether it did so in fact they prudently refrained from certifying. The certificate of the attorney-general likewise discreetly forbears to express the certainty which the legislature demanded. Since they lack official authentication the so-called "General Statutes of 1897" never became more than a private compilation, and are not even *prima facie* evidence of the statute law of the state.

The reference in the act of 1901 to section 49 of chapter 101 of the Webb compilation did no more than identify a subject of legislative cognizance. It did not change the character of the work, or legitimate the

11—74 KAN.

partition of section 8 of chapter 149 of the Laws of 1885.

The act of 1897 conferred no authority upon Mr. Webb to make a revision of the laws of the state. He was granted no power to restate the statutes in any supposedly improved or corrected form, or to supplant them with anything not previously formulated. His work was merely that of a compiler, with some discretion concerning the printing of the purely formal parts of the statute and over the arrangement of subjects. He could promulgate nothing to take the place of existing law. He possessed no legislative power, and the legislature could not adopt his compilation as a work of revision and make it a new declaration of the law except according to the forms and methods prescribed by the constitution. When the act of 1901 was passed the form of section 8 of chapter 149, Laws of 1885, had not been legally changed from that which the enrolled bill deposited in the office of the secretary of state still bears.

In the parliamentary practice of England, the United States, and all other countries where the science of legislation has been cultivated and developed, it is customary to divide legislative enactments into sections. (*Town of Martinsville v. Frieze,* 33 Ind. 507, 509.) By the constitution of this state the section is made the indivisible unit of the legislative fabric. To insure the diligent attention of the legislative mind, the reading of a bill by sections at the time of final passage in no case can be dispensed with. (Const., art. 2, § 15.) To prevent members of the legislature from practicing deception by the enactment of blind and confusing amendments, to prevent them from misleading themselves and the public as to changes in the law, and to remove the difficulties and uncertainties accompanying extended examinations and comparisons of various acts to ascertain the true state of the statute law upon any subject (*The People v. Mahaney,* 13 Mich. 481), the constitutional provision quoted above

was adopted by the people, making it necessary to embody in every amendatory act the entire section or sections amended and providing that the section or sections amended shall be repealed. This constitutional requirement is mandatory and invalidates all acts in contravention of its terms. (*The State v. Guiney,* 55 Kan. 532, 40 Pac. 926; *In re Ashby,* 60 Kan. 101, 55 Pac. 336; 26 A. & E. Encycl. of L. 709.)

The chopping up of section 8 of chapter 149, Laws of 1885, in the Webb compilation wrought the very mischief which the constitution sought to guard against. The legislature was misled. Believing section 49 of that work to be a complete section the legislature dealt with it as such, disregarding the matter contained in section 50, with which it had been inseparably united. The full extent of the amendatory purpose is indicated with exactness and precision. There was no intention of altering or rescinding the part of section 8 which Webb's section 50 covers. The first part of section 8 plants the seed; the second part reaps the harvest. The one secures evidence; the other declares the use to be made of it. Without the second part it would be idle to pursue the course outlined in the first. The legislature might as well have said: "The first 27½ lines of section 8 of chapter 149, Laws of 1885, are stricken out and in lieu thereof the following is inserted," etc. If the act of 1901 were valid there would be left a truncated section 8 of chapter 149 of the Laws of 1885, and there would be created an actual section 49 of chapter 101 of a book which does not evidence the law. The mandate of the constitution having been disregarded in the enactment of chapter 233 of the Laws of 1901, it is void.

It is not necessary, in view of the conclusion which the court has reached, to discuss other questions presented by the record. The judgment of the district court is reversed, with direction to quash the information.

All the Justices concurring.