No. 24,345.

THE STATE OF KANSAS, ex rel. WILLIAM H. BURNETT, as County Attorney of Reno County, *Appellee,* v. WILLIAM M. FRENCH et al., *Appellants.*

SYLLABUS BY THE COURT.

1. HIGH SCHOOLS—*Method of Levying and Apportioning Taxes for Support of County and Rural High Schools—Statute Valid.* Chapter 247 of the Laws of 1921 is held valid, and construed and held to mean that in counties situated like Reno with reference to county and rural high schools, a general high-school fund is to be raised and apportioned to all high schools in the county; that the words "funds for the support of said high schools" in the title mean the same as "county high-school fund" mentioned in section 1.

2. SAME—*Construction of Statute.* The grammatical inaccuracies contained in the act, including the title, leave the act susceptible to reasonable construction, and if properly construed its various provisions present no material inconsistency.

The State, *ex rel.*, v. French.

3. SAME—*Construction of Statute—Last Expression of Legislative Will—Repeal of Former Conflicting Statutes.* While the act contains no specific repeal by title of former statutes it is held to be the last expression of the legislative will touching the subject covered, before which all former conflicting legislative expressions must be deemed silent.

4. SAME—*County and Rural High-School Districts Subject to Legislative Modification or Dissolution.* Quasi municipalities like county and rural high-school districts are creatures of the legislature and subject to legislative modification or dissolution; and the mere name used for one of these schools or districts is of negligible importance.

5. SAME. Certain questions discussed in the briefs held to need no consideration or decision in this action at this time.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed July 8, 1922. Reversed.

*Carr W. Taylor, John H. Connaughton,* and *F. Dumont Smith,* all of Hutchinson, for the appellants.

*William H. Burnett,* county attorney, for the appellee; *Frank L. Martin,* and *Walter F. Jones,* both of Hutchinson, of counsel.

The opinion of the court was delivered by

WEST, J.: This action was brought on the relation of the county attorney against the county commissioners and certain high-school districts to have chapter 247 of the Laws of 1921 declared unconstitutional and void, and a declaratory judgment rendered touching the power and duty of the board of county commissioners regarding the Reno county high school; or if the chapter should be held valid, a declaratory judgment fixing "the official status of all members of the board of trustees, who live in the territory, which in legal effect will bear no part of the taxes for the support of the Reno county high school, and that their offices be declared vacant and that all their acts in making a levy of taxes shall be declared illegal and void," and that the county treasurer be enjoined from apportioning any of the Reno county high-school fund to any other purpose than that for which it was collected and that such purpose be declared to be illegal and void, and that the county treasurer be ordered and directed to credit and rebate and repay the amount of all such taxes to the taxpayers as shown by the records of his office.

The petition alleged in substance that the accredited high schools of Reno county other than the Reno county high school authorized

by the sessions of 1920 and 1921 increased the levies for school purposes; that the various boards of certain high schools had issued excessive amounts of bonds and erected costly and extravagant buildings, and increased the burden of taxation and certain high schools had made long contracts and increased salaries; that the tax laid for school purposes has greatly increased and in a majority of accredited high-school districts had become so excessive as to be a burden; that the county treasurer threatened to apportion the county high-school fund so that each accredited high school will receive such proportion thereof as its taxable property bears to the taxable property of the entire county; that the various school boards in the accredited high-school districts have made excessive levies, and if the accredited high-school districts should receive the amount apportioned to them under the provisions of the act of 1921, they would receive large sums in excess of their requirements; and if the act is valid the six members of the Reno county board of trustees will all reside in territory which will not actually contribute any part of the tax for the maintenance of the school and will have ceased to be residents of the territory in which such school is taxed, and are, therefore, by virtue of this act, out of office and all their acts void.

A demurrer to the petition was filed. The court reserved its ruling until after the introduction of the evidence.

It was testified that the tax valuation for 1921 was $105,745,689; that the county high-school levy was "ten and eight-tenths cents on the hundred dollars—one and eighty [eight] one-hundredths mills on the dollar"; that the county commissioners changed the county-commissioner districts of Reno county but did not change the residence of any of the trustees of Reno county high school with reference to their commissioner districts. It was admitted that the present trustees of the Reno county high school were reëlected before the passage of the act of 1921. It was testified that there are several school districts in Reno county that do not maintain a high school. There are twelve accredited high schools, including the county high school at Nickerson.

Both parties introduced their evidence and the cause was briefed and argued.

The trial court made findings of fact and conclusions of law to the effect that the title of the property of the Reno county high school at Nickerson is in the county and that such school must be

supported and maintained by the entire county and not by any particular part; that the taxes involved were carried on the tax rolls as a county levy for Reno county high-school purposes and appear on the tax receipts as a county levy for the county high school; that this levy is carried on the tax rolls and shown on the tax receipts as a distinct levy for county high-school purposes in addition to the several and separate levies made for the ten rural and two city high-school districts, each of which was provided for by separate levies. It was found that the levy of ten and eight-tenth cents for county high-school purposes was arrived at by the county high-school commissioners notifying the county commissioners that they estimated they would need about $35,000 for the maintenance of the Reno county high school at Nickerson for 1921 and 1922; that the county clerk, to determine the rate of levy, took the assessed valuation of the parts or districts of the county outside of the rural high-school districts and city districts and estimated the number of mills necessary to levy against the assessed valuation of such outside districts to raise the amount required for the county high schools and then levied such rate against the entire county; that by this method the county would collect approximately $79,-180.20 in excess of the amount needed by the Reno county high school, which is intended to be returned to the districts from which collected, "thus leaving less than three-sevenths of the territory of the county to furnish the taxes with which to support the Reno county high school."

It was concluded as matters of law that the county high school is county property and its trustees county officers and that it is conducted for the benefit of the entire county and controlled by it, and that the levy should be against the entire county. The excess over $35,000 should be returned to those who paid it and the treasurer should be restrained from paying any of this money to the rural high-school or city districts. The demurrers therefore were overruled.

The defendants appeal and various assignments of error are made, but the chief question is the validity of the statute.

In the ordinance accepting the grant of land from congress provision was made for large tracts to be devoted to educational purposes. (Gen. Stat. 1915, §§ 95-103.) In the act of admission it was provided that sections 16 and 36 in every township be set aside to the state for the use of schools. Article 6 of the constitution enjoins

upon the legislature to establish a uniform system of common schools "and schools of a higher grade." A perpetual school fund is provided and higher institutions of learning are required. The old idea was to give a child the benefit of a grade-school education or its equivalent and then if he wanted to go to college, have him enter a preparatory school. But it soon dawned on the minds of our educators that local high schools are more convenient and desirable than some distant academy and so it was that in 1886, the legislature enacted chapter 147, "An act to authorize the establishment and maintenance of county high schools." This act made it possible for a county of six thousand population or over, by a vote, to have a county high school. At the same session, acts were passed making provision for high schools in certain named counties. Two counties were specially provided for by the legislature of 1891, one by the legislature of 1893, and four by the legislature of 1895. In 1897, chapter 180 was enacted relating to the establishment of county high schools in counties of less than 2,500 population—authorizing the county commissioners to negotiate with the school districts at the county seat for a high school after a prescribed petition or election had been circulated or held. Special acts were also passed covering four named counties. In 1899, chapter 236 established a county high school at Nickerson, to be under the Nickerson board of education, and provided that whenever the majority of the electors of Reno county should vote to establish "said county high school" the county commissioners should appoint a board of trustees. In 1901, divers high-school acts were passed including one for Elk county, and one providing for county high schools in Jewell, Phillips, Smith and Washington counties. In 1903, a still larger number of high-school acts were passed, including chapter 466, relating to the establishment of a Reno county high school at Nickerson and providing for the transfer to the county of certain grounds and buildings; also, chapter 432, amending the high-school act of 1886.

Chapter 397 of the Laws of 1905 (the Barnes act) provided that in every county with one or more school districts or cities of less than 16,000 inhabitants which should have maintained high schools with certain courses of instruction, the county commissioners should levy a certain tax for the purpose of creating a general high-school fund. The treasurer was to pay such school districts a *pro rata* part of such fund "apportioned to the several school districts ac-

cording to the average daily attendance." (§ 4.) Section 6 required the county superintendent to certify to the county clerk and treasurer the average daily attendance in the several high schools each year. In 1907, section 6 was amended, requiring the county superintendent to certify the average daily attendance and the amount necessary to maintain the several county high schools. (Ch. 333.) Section 3 of chapter 281, Laws of 1917, provided that the county treasurer should apportion all moneys produced by the levy required by section 1 of the act, and remaining in his hands after the second semiannual payment had been made, as provided in section 2, "to the treasurer of the board of education of each city, the treasurer of each school district, and the treasurer of each rural high-school district entitled to receive the same in proportion to the total number of days of actual attendance."

We now come to the act (Laws 1921, ch. 247) around which this litigation revolves. The title is:

"An act relating to high schools in certain counties containing a county high school and also one or more cities, districts or parts of districts, each maintaining a high school in addition to the county high school, and providing for the apportionment and distribution of the funds for the support of said high schools. . . ."

Section 1 prescribes that hereafter in every county in which there is a county high school—

"And also one or more city high-school districts or other high-school districts or parts of high-school districts, each maintaining, in addition to the county high school, a high school accredited by the state board of education, the board of county high-school trustees, or the board of county commissioners in counties not having county high-school trustees, shall apportion the county high-school fund as levied and collected so that each such district shall receive such proportion of the county high-school fund as the taxable property of the county lying within such district bears to the taxable property of the entire county, and the county treasurer of such county is hereby authorized and directed to place to the credit of each high-school district coming under the provisions of this act such part of the county high-school fund as they shall be entitled to under the apportionment made by the board, and the remainder of the county high-school fund shall be for the support of the county high school; . . ."

It was testified that there are eleven rural high schools in Reno county; that the tax valuation for 1921 was $105,745,689; that the county high-school levy was 1.08 mills. The court found that the title and ownership of the Reno county high school was in Reno county; that the levy made for the support and maintenance of the

county high school was carried on the tax rolls and shown on the tax receipts as a distinct and separate county levy in addition to the levies made for the ten rural high schools and the two city high schools, provided for by separate levies; that the levy of 1.08 mills for county high-school purposes was arrived at by the county high-school commissioners notifying the county commissioners that they estimated there was needed for the county high school at Nickerson $35,000; that the county clerk took the assessed valuation of the parts or districts of the county outside of the rural high-school districts and city districts, and estimated the number of mills it would be necessary to levy against this assessed valuation of outside districts to raise the amount required for the county high school, and then levied that rate against the entire county.

"By this method the county will raise and collect approximately $114,180.20, which is $79,180.20 in excess of the amount needed for the use of the Reno county high school, which excess it is proposed and intended to return to the districts from which collected, thus leaving less than three-sevenths of the territory of the county to furnish the taxes with which to support the Reno county high school."

Counsel contend that chapter 247 violates the uniform-and-equal-rate tax provision of the constitution. It is argued that the county high school was established by the county commissioners under the act of 1903; that it is the property of Reno county; that that act fixed the limits beyond which levies should not be made and provided that the county high school should be governed by the general laws except as otherwise provided; that another statute provides that the trustees should qualify and enter upon the duties of their office as other county officers; and that section 9298 of the General Statutes of 1915 provides that the tuition shall be free to all pupils residing in the county—from all of which it is concluded that the county high school is county property, the trustees county officers, and the school is conducted for the benefit of all the pupils in the county. It is pointed out that the act of 1886, as amended by chapter 211 of the Laws of 1909, required the county clerk to spread the county high-school levy and collect all taxes the same as other county taxes. Further, that section 1, chapter 247 of the Laws of 1921, deals with but one fund, but not the county high-school fund already established by law for the support of a county institution; that section 2 recognizes the existing and established county high-school tax and does not assume to change its character

from a county tax to a district tax, and does not repeal the authority previously given to levy a county high-school tax. That to effect the purpose of the law, which is to relieve part of the county from a county tax and impose upon another part of the county the burden of maintaining a county institution, violates section 1 of article 11 of the constitution. Decisions are cited holding that if a tax is levied upon property it must be uniform throughout the territory to which it is applied. If it is said that all the property is sub-,ject to this county high-school tax then this violates section 4 of article 11, forbidding the diversion of a fund from its original purpose. Also, that if the act be regarded as a complete bill in itself authorizing a new tax it is unconstitutional because it is levied for two purposes instead of one—to support a county high school and to carry into effect the provisions of the act. That this effect would be to relieve part of the county from the maintenance of a county institution and put the full burden on only a part of the county. It is contended the act provides that the apportionment of the county high-school fund for other schools is clearly a diversion and violation of section 4; that under the act of 1903 the board of trustees of Reno county high school was authorized to levy taxes not in excess of one mill and any apportionment of such fund would be a diversion. It also said that the act provides if a part of the high-school district is within the county, that district shall receive a portion of the county high-school fund, which would be a diversion of the fund from one county to another. Again, that if the act is valid, the Hutchinson board of education can use its share of the county high-school fund for the maintenance of grade schools or for any school purpose other than high-school purposes.

Finally, it is urged that the act cannot apply to Reno county for it is impossible to elect six trustees of the county high school and comply with the law which requires that two trustees be elected from each commissioner district; that the greater part of Hutchinson constitutes one county commissioner district all of which is within the Hutchinson city high-school district, and as the act provides that no member of the board shall be elected who is a resident of another district, no trustee can be elected from the Hutchinson commissioner district.

A careful examination of the act and previous high school legislation demonstrates that this is a sort of climactic attempt to reconcile conditions which presented a confusing situation to the law-

makers. In keeping up with the local demands for county and rural-high schools, doubtless numerous acts concerning these institutions involved duplication in taxation and expense of maintenance. It appears that Reno county has eleven rural-high schools besides the county high school. These came about by virtue of divers enactments covering a considerable period of time, and the legislature undertook by chapter 247 to simplify matters in Reno and other counties similarily situated while in no wise diminishing the provision made for high-school instruction.

Of course, county high-school districts and rural high-school districts, like many other municipalities, are purely creatures of the legislature; not only subject to its creative power but its power to modify or dissolve. And so we find a large county with twelve high schools, not all governed by the same legislative provisions, and why might not the legislature take hold of this matter without violating any constitutional inhibition and systematize and minimize the burdens of the Reno county taxpayers? It is quite apparent that by the first section it was intended to make one high-school levy on the property of the county and so to apportion the fund that each high-school district should receive its proper share thereof in the ratio which its assessable property bears to that of the entire county. There are some words inaccurately used in the section but it was once said by a very able judge: "There is no grammar in law," and we do not find enough lack of grammar in this section to destroy its significance and effect.

While no specific repeal by title of former statutes is declared, nevertheless this act is the last expression of the legislative will, before which all former conflicting expressions must be deemed silent. There is no constitutional rule of statutory amendment and repeal which precludes the operation of this sensible and practical rule of giving effect to the latest expression of the lawmaking department of state government.

Touching the construction of the act, counsel for the plaintiff say:

"To carry into effect the provisions of the act is to disclose the whole and only purpose of the law, which is to relieve a part of the county from a county tax and impose upon another part of the county the burden of maintaining a county institution."

Again:

"The effect of the provisions of the act is to release part of the county from the maintenance of a county institution and impose the full burden thereof upon only part of the county."

Opposing counsel thus give their conception of the effect and purpose of the act:

"It will be observed that the act is not an act for the support of the county high school, but is an act for the support of all the accredited high schools in counties having a county high school. In effect it reduced the Nickerson school to the same rank as the other rural high schools of the county."

Again:

"The Reno County High School is part of a system of high schools no longer necessary and completely obsolete. . . . An examination of the title and body of the act shows clearly that there was to be raised a general high-school fund apportioned among all the accredited high schools in the county."

We must be governed by the natural meaning of the words used by the legislature. The title relates to "high schools in certain counties" and speaks of "providing for the apportionment and distribution of the funds for the support of said high schools." Can this mean other than the accredited high schools of the county, Nickerson included? Then section 1 says the proper officers "shall apportion the county high-school fund as levied and collected so that each such district shall receive such proportion of the county high-school fund as . . ." This seems naturally to mean "each such high-school district" as no other kind was under consideration; also the "county high-school fund" must mean the one to be levied under this section for all "the said high schools"—not the one previously levied under the former statutes for the one county high school. The county treasurer is to credit "each high-school district coming under the provisions of this act" with such part of the county high-school fund as they shall be entitled to under the apportionment made by the board and "the remainder of the county high-school fund [the one here provided for—not the former one] shall be for the support of the [Nickerson] county high school."

Taking the title and the section together it must be concluded that the "county high-school fund" named in section 1 is the same thing as the "funds for the support of said high schools" named in the title. Otherwise there is so great a conflict and divergence that the title and the section cannot be reconciled and the act must fall for lack of meaning—a thing not to be considered so long as reasonable interpretation may render them harmonious.

The legislature will soon be in session when proper provision may and doubtless will be made touching the residence, successorship

and duties of the high-school trustees affected by this act, and we perceive no need for any determination of these matters now.

The situation as we view it is this: The county had numerous high schools with divers officers and needs calling for taxation. It also had one county high school. Thus there was an inevitable duplication of territory, taxation and expense. By chapter 247 the entire high-school system of this and counties similarily situated was put in a new and entirely different category and condition. None of these numerous high schools was to be crippled or destroyed, but all were to be provided for by one common county fund which was to be apportioned as indicated, so that, in effect, instead of eleven rural high schools and one county high school, this county was to have twelve rural high schools, so provided for as to assessment and taxation that all duplication should be avoided. In dealing with such quasi municipalities a name is nothing and the legislature may freely change a county high school into a rural or a rural into a county high school. The entire matter and situation are wholly subservient to the wish and power of the legislature.

Some other questions are discussed which need no consideration or decision in this action and at this time.

The ruling is therefore reversed and the act is held valid.