No. 27,403.

THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee,* v. THE BOARD OF EDUCATION OF THE CITY OF TOPEKA et al., *Appellants.*

SYLLABUS BY THE COURT.

STATUTES—*Amendment—Constitutional Requirements.* Statutes purporting to limit authority of boards of education in cities of the first class to levy taxes as provided in chapter 330 of the Laws of 1907, considered, and held to be void as violating article 2 of section 16 of the constitution, providing that no law shall be amended unless the new act contain the entire section amended and that the section amended shall be repealed.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed April 9, 1927. Reversed.

*Ralph T. O'Neil, John D. M. Hamilton* and *Barton E. Griffith,* all of Topeka, for the appellants; *George T. McDermott,* of Topeka, of counsel.

*William R. Smith, Owen J. Wood, Alfred A. Scott* and *Alfred G. Armstrong,* all of Topeka, for the appellee.

1. Appeal and Error, 4 C. J. p. 575 n. 80.
2. Statutes, 36 Cyc. p. 1054 n. 42 new.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover taxes paid under protest. Plaintiff recovered, and defendants appeal.

. The levy was made by the board of education of the city of Topeka, in 1923, before the Revised Statutes of 1923 became effective. The board acted under section 1 of chapter 330 of the Laws of 1907, which at the time appeared as section 9070 of the General Statutes of 1915, the compilation of statutes then in common use. The section now appears as R. S. 72-1702. The section was amendatory of an earlier act relating to regulation, support and maintenance of public schools in cities of the first class, and contains the only grant of authority which boards of education in cities of the first class have possessed since the year 1907 for support of their schools, including erection and repair of school buildings. In the body of the section was a proviso that cities of the first class having a population exceeding 38,000 might levy a tax of not to exceed 3 mills on the dollar for building purposes. In 1923 the population of the city of Topeka exceeded 38,000. Pursuant to authority conferred by the statute, the board levied a tax for building purposes of 2.75 mills on the dollar. Conceiving the authority of the board had been limited by section 9 of chapter 52 of the Laws of 1920, to a levy for building purposes of 2 mills, the railway company tendered what it considered was its lawful taxes. The tender having been refused, the company paid the whole tax, under protest. The action was for recovery of the taxes produced by levy and collection of 75/100 of a mill on the dollar on plaintiff's taxable property, amounting to $3,020.02.

In 1907 the tax commission was created, the county-assessor method of assessment was adopted, and other improvements were made in the tax law. The result was, a greatly increased amount of taxable property was brought on the tax rolls, and taxing bodies levying their usual rates found themselves in possession of sums of money far beyond their needs. To prevent extravagance and waste, the legislature of 1909 undertook to limit tax levies in all taxing districts of the state, by chapter 245 of the Laws of 1909. The first fifteen sections of the act related to counties. Sections 16 to 21, inclusive, related to cities. Section 22 related to levies of school taxes by boards of education in cities of the first class, section 23 to school taxes in cities of the second class, and section 24 to school district taxes. Section 25 dealt with levies in other taxing districts

by a blanket limitation to 25 per cent of the rates authorized by existing law. Section 22 read as follows:

"The authority of boards of education in cities of the first class to levy taxes, as provided in chapter 330, Laws of 1907, is hereby limited so that the board of education of any such city shall not fix a rate of levy for the respective purposes in excess of the following named rates: For the support of the schools of the city, including building and repairs of school buildings in all cities of 40,000 population or under, the rate of levy shall not exceed 6 mills; for the support of the schools in all cities having a population of over 40,000, the rate of levy shall not exceed 5 mills; for building purposes and repairs of school buildings in all cities having a population of over 40,000, the rate of levy shall not exceed 1 mill." (Laws 1909, ch. 245, § 22.)

The act concluded with the nonsensical provision, "All acts or parts of acts in conflict with this act are hereby repealed." The quoted section became section 11378 of the General Statutes of 1915.

In 1917, section 11378 of the General Statutes of 1915 was amended to read:

"That the authority of boards of education in cities of the first class to levy taxes as provided in chapter 330, Laws of 1907, is hereby limited so that the board of education of any such city shall not fix a rate of levy for the respective purposes in excess of the following named rates: . . ."

Then followed a new classification of cities of the first class, and new limitations on levies for school purposes. Section 11378 of the General Statutes of 1915 was expressly repealed. (Laws 1917, ch. 324.)

In 1919 a new classification of cities of the first class was made, a new limitation on tax levies by boards of education was fixed by an act in the same form as the act of 1917, and chapter 324 of the Laws of 1917 was expressly repealed. (Laws 1919, ch. 308.)

At the special session held in 1920, the legislature undertook to fix limitations on levies for support and maintenance of schools of all kinds throughout the state. Section 9 related to levies by boards of education in cities of the first class, and reads as follows:

"SEC. 9. That section 1 of chapter 308 of the Laws of 1919 be and the same is hereby amended to read as follows: Section 1. That the authority of boards of education in cities of the first class to levy taxes as provided in chapter 330, Laws of 1907, is hereby limited so that the board of education of any such city shall not fix a rate of levy for the respective purposes in excess of the following named rates: For the support of the schools of the city, the rate of levy shall not exceed 12 mills; for the purchase of sites and for the construction and repairing of school buildings, the rate of levy shall not exceed 2 mills." (Laws Special Session 1920, ch. 52, § 9.)

The law of 1919 was expressly repealed. It will be observed this statute placed all cities of the first class on the same footing, without regard to differences in population or assessed valuation.

In 1921 the legislature passed a special act applying to the city of Kansas City only, which among other provisions limited school levies for general purposes to 12 mills, and levies for building purposes to 2 mills. This act undertook to repeal section 9 of the act of 1920 in toto. (Laws 1921, ch. 127.)

Plaintiff contends the special act of 1921 repealed the act of 1920 with respect to that city only to which the special act applied, and cites in support of the contention the case of *State v. Prather,* 84 Kan. 169, 112 Pac. 829. The question need not be determined, because the act of 1907 has not been affected by any of the subsequent legislation referred to.

In order that the relation of subsequent legislation to the act of 1907 may be seen at a glance, the statute is reprinted here:

"That the board of education in cities of the first class shall, in the month of August of each year, levy a tax for the support of the schools of the city, including building and repairs of school buildings, for the fiscal year commencing on the 1st day of July last preceding the month of August in which such levy shall be made, not exceeding in any one year 20 mills on the dollar on all personal, mixed and real property within said city which is taxable according to the laws of the state of Kansas, which levy the president and clerk of the board shall, on or before August 25, certify to the county clerk, who is hereby authorized and required to place the same on the tax roll of said county, to be collected by the treasurer of the county as are other taxes and paid over by him to the treasurer of the board of education, subject to the order of said board of education: *Provided,* That in all cities of the first class having a population of exceeding 38,000 inhabitants, the board of education of such city shall have power and is hereby authorized to levy a tax for the support of the schools of such city for such fiscal year of not to exceed 17 mills on the dollar of all taxable property in such city; and shall have power, in addition thereto, to levy a tax upon all the taxable property in such city of not exceeding 3 mills on the dollar of the assessed valuation for building purposes and repairs of school buildings in such city: *And provided further,* That each and all of the foregoing levies hereby authorized shall be exclusive of and in addition to the amounts necessary to be levied under existing laws for the payment of interest upon bonds heretofore issued or which may be hereafter issued by boards of education of cities of the first class and for a sinking fund for the redemption of such bonds, as provided by the laws under which such bonds have been or may be issued." (Laws 1907, ch. 330, § 1; R. S. 72-1702.)

What effect did section 22 of the act of 1909, printed above, have on this statute?

The general grant of power to levy taxes and the steps to be taken to bring money into possession of the treasurer of the board of education, subject to the order of the board for expenditure for school purposes, were not affected. The second proviso, relating to levies to pay interest on bonded indebtedness and to create a sinking fund, was unchanged. But the limitation of 20 mills on the dollar for any one year was eliminated. The classification of cities on the basis of population was changed from 38,000 to 40,000. The rate for all purposes in cities having a population of less than 40,000 was limited to 6 mills, and the rate in larger cities was limited to 5 mills for general purposes, and 1 mill for building purposes. The result was, the section was changed by striking out eleven words of the portion preceding the first proviso, the first proviso was nullified, and in place of the first proviso new matter was inserted radically changing the law. This method of legislation is expressly forbidden by the constitution:

"No bill shall contain more than one subject, which shall be clearly expressed in its title, and no law shall be revived or amended, unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed." (Art. 2, § 16.)

Some of the decisions of this court holding invalid statutes enacted in defiance of this section of the constitution are the following: *State v. Deets*, 54 Kan. 504, 38 Pac. 798; *State v. Guiney*, 55 Kan. 532, 40 Pac. 926; *In re Ashby*, 60 Kan. 101, 55 Pac. 336; *State v. Carter*, 74 Kan. 156, 86 Pac. 138; *Hicks v. Davis*, 97 Kan. 312, 154 Pac. 1030; Id., 97 Kan. 662, 156 Pac. 774.

If the act of 1909 had contained but a single section consisting of the matter contained in section 22, besides the repealing section, it would have been patently invalid. Invalidity was multiplied, not cured, by dealing in wholesale fashion with many statutes whose provisions were changed without compliance with the constitutional requirement. The act was not legislation by reference, because legislation by reference leaves the law referred to unmodified. (*State v. Shawnee County*, 83 Kan. 199, 110 Pac. 92.) The act was not a new, independent superseding act, a code complete in itself, relating to power of taxing bodies, including boards of education in cities of the first class, to levy taxes. It was not interpretative. It could not operate to repeal the law of 1907 by implication because that law was expressly referred to and modified, and attempt was made to repeal the inconsistent portion. The purpose of the constitu-

tional restriction was "to prevent uncertainty and confusion which might arise from adding or striking out words and making additions and substitutions without rewriting the section as amended." (*State v. Pauley*, 83 Kan. 456, 464, 112 Pac. 141.) That purpose was flagrantly disregarded.

Forty-five years ago the court propounded to itself the following question:

"Can the legislature amend these sections or the sections of any statute, in any other mode than that prescribed by the constitution?"

The answer was:

"It is only in rare cases, and reluctantly, that we should hold that it can." (*Stephens v. Ballou*, 27 Kan. 594, 601.)

The rare cases referred to are doubtless those in which a statute has stood unchallenged for years, and is so intimately related to the social welfare that to overturn it would entail consequences too serious to be contemplated. In this instance the court need not stand in pause on account of any consideration of that kind. By the revision of the statutes in 1923 the state's taxing system was put upon a fresh foundation, and no general disturbance of public finances can result from now applying the statutory test to antecedent session laws.

The statutes of 1917, 1919 and 1920 were subject to the same infirmity as the statute of 1909. In each one the authority of boards of education to levy taxes "as provided in chapter 330, Laws of 1907," was "limited" so that such boards could not do what they were previously permitted to do. There was no magic in the use of the word "limited." A new provision relating to tax levies was injected into the body of the existing section relating to that subject, without reënacting the section and without repealing it. The old section was a part of the law relating to schools, the new provision was a part of the law relating to taxation, and the confusion which the constitution sought to forestall resulted.

At the time the taxes sued for were levied, the statute of 1907 was in full force, and the levy made by the board was within the limitation prescribed by that statute.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for defendant.