No. 31,389

THE STATE OF KANSAS, ex rel. ROLAND BOYNTON, Attorney-general, *Plaintiff*, v. THE STATE CORPORATION COMMISSION, *Defendant*.

(23 P. 2d 606.)

Opinion filed July 8, 1933.

*Roland Boynton*, attorney-general, and *John G. Egan*, assistant attorney-general, for the plaintiff.

*Charles W. Steiger, Frank P. Eresch*, both of Topeka, and *R. O. Mason*, of Columbus, for the defendant.

The opinion of the court was delivered by

BURCH, J.: The action is in form one of mandamus commenced by the attorney-general to compel the state corporation commission to assume performance of certain duties. The 1933 session of the legislature passed an act which committed performance of the duties to the state corporation commission. Another and later act committed performance of the duties to the charter board and the corporation commission. The purpose of the action is to obtain a declaratory judgment determining which act controls.

Previous to the 1933 session of the legislature R. S. 1931 Supp. 17-1229 was a part of the speculative-securities law and related specifically to the granting, denial and cancellation of blue-sky permits. The section required the bank commissioner to perform certain functions in connection with these subjects but committed final action to the charter board. At the 1933 session it was deemed advisable to improve the law without, however, making any redistribution of power between the bank commissioner and the charter board. To effectuate this purpose senate bill No. 322 was introduced

on February 8. The senate passed the bill on February 17, and on that day it was sent to the house and referred to the committee on banks and banking. On March 9 that committee reported, recommending the bill for passage, with some amendments not material here. On March 18 the house committee of the whole recommended passage of the bill as amended, subject, however, to amendment and debate. Further action on the bill was not taken until March 21, and the action then taken caused the trouble which is the subject of this lawsuit.

On March 13 senate bill No. 613 was introduced. The title read:

"An act creating a state corporation commission, and transferring to and imposing upon the same all jurisdiction now existing in the present public service commission and all jurisdiction and power of the charter board and commissioner of banking with reference to speculative securities, and repealing chapter 259 of the Laws of 1929, being sections 74-601, 74-602, 74-603, 74-605a, 74-605b, 74-605c, 74-606 and 74-608 of the 1931 Supplement to the Revised Statutes."

Section 4 of the bill transferred to the state corporation commission all the authority previously possessed by the bank commissioner and the charter board. The bill was speedily put through both branches of the legislature and became a law on March 18, on publication in the official state paper. (Laws 1933, ch. 275.) The law did not enlarge, restrict, or otherwise change the powers of the charter board and bank commissioner under R. S. 1931 Supp. 17-1229, or under pending senate bill No. 322. Administration of the speculative-securities law was simply taken from the charter board and the bank commissioner and was vested in the newly created corporation commission.

On March 21, three days after the corporation-commission act became operative, senate bill No. 322, then on the house calendar on third reading, subject to amendment and debate, was reached for consideration. The bill was carefully amended in this manner: Wherever the words "bank commissioner" appeared, they were stricken out, and the words "corporation commission" were substituted. As amended the bill was passed by the house, the senate concurred in the house amendments, and on March 24 the governor approved the bill. The bill provided it should take effect on publication in the statute book, which was published on June 5. ·(Laws 1933, ch. 148.)

To summarize, under the old law, the blue-sky law was admin-

istered by the charter board and the bank commissioner. Under the corporation-commission act, the blue-sky law was administered by the corporation commission. Under the law taking effect June 5, a portion of the blue-sky law is to be administered by the charter board and the corporation commission. The attorney-general contends this result is absurd and cannot in reason reflect the legislative intention.

It cannot be doubted the legislature knew all about passage of the corporation-commission act. After that act became effective, the house, where senate bill No. 322 was pending, took up that measure for final disposition. The words "bank commiss'oner" appeared twenty-three times, and the words "charter board" appeared seventeen times. The bill was considered line by line. Wherever the words "bank commissioner" appeared they were stricken out, and the words "corporation commission" were inserted. The words "charter board" were consistently left in the bill.

The first part of the law as passed relates to registration of securities by qualification. It provides for examination of statements and documents required to be filed under the preceding section of the speculative securities act and provides, if advisable, for a detailed inspection, examination, audit and investigation of the affairs of the security promoter. This investigation is to be made by the corporation commission, and the law provides as follows:

"And said corporation commission shall furnish a complete statement and record of its inspection, examination and investigation, together with a copy of the appraisal aforesaid, to the charter board."

If the corporation-commission act were to govern, it is not likely that body would be required to make a report to itself. Investigation by one body and report to another is here provided for in unmistakable terms. The statute continues as follows:

"The charter board shall, within ten days after the corporation commission has made its report to it, give the applicant for registration a hearing if he so desires, and said charter board shall have power to make an independent investigation, inspection and examination . . ."

The statute also contains the following provisions:

"That upon complaint being made to the corporation commission or to the charter board, and notice being given to the corporation commission of such complaint, the said corporation commission may forthwith suspend the order granting the permit pending final hearing."

"If the charter board, upon a full hearing, shall find that there are just grounds for the complaint made, and that the issuer, promoter, broker . . . have violated any of the provisions of this act, or of the order of the charter board, or of the corporation commission . . . said charter board shall make an order canceling the permit hereinbefore granted."

"That before any permit shall be issued by the corporation commission under the order of the charter board, as herein provided, all stock or securities of any kind issued, or to be issued, in payment of property, patents, formulæ, good will, promotion or intangible assets shall be deposited by the person to whom they are to be issued or by the company or promoter issuing them, with the corporation commission of the state of Kansas, to be held by it in escrow."

In all these instances the words "charter board" and the words "corporation commission" are in such juxtaposition it is impossible to say the legislature did not know what words it was using or did not know the meaning of the words it did use. Consideration of the sense of these provisions and of the entire act necessitates the same conclusion. If it be conceded the legislature forgot for the nonce that under the corporation-commission act all powers of the charter board had been vested in the corporation commission, the legislature subsequently framed and passed an act devolving powers and duties on the charter board with all the definiteness, certainty, and solemnity attending passage of the corporation-commission act. The later act cannot be rewritten by simply striking out the words "charter board," where they appear, and substituting the words "corporation commission." As written the two acts cannot be harmonized. The result is the later act must prevail.

The judgment is rendered accordingly.