No. 31,940

School District No. 45, School District No. 22 and School District No. 75, all of Stafford County, *Appellants*, v. The Board of County Commissioners of the County of Stafford, James W. Jordan, as County Clerk, and Gladys Fox, as County Treasurer, *Appellees.*

(40 P. 2d 334)

Opinion filed January 26, 1935.

*Robert Garvin, Evart Garvin* and *Morris Garvin,* all of St. John, for the appellants.

*C. W. Slifer,* of St. John, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: Three different school districts in Stafford county bring this action against the board of county commissioners, the county clerk and the county treasurer of that county, seeking (1) to recover money for the districts claimed by plaintiffs to have been paid by defendants out of the Barnes high-school fund under authority of an unconstitutional law, (2) to obtain a declaratory judgment declaring a certain law unconstitutional, and (3) to obtain an injunction against the board of county commissioners to prevent the charging of tuition of pupils attending high schools in adjoining counties against the Barnes high-school fund.

To the plaintiffs' petition the defendants filed a general demurrer, which after due consideration was sustained, from which ruling the plaintiffs appeal, urging in particular that R. S. 1933 Supp. 72-3807, being section 2 of chapter 239 of the Laws of 1929, is unconstitutional, being in violation of three constitutional provisions and requirements. It is only the second part of this section that is involved in this controversy, that is, the part beginning with the word "Provided," which portion is as follows:

"*Provided,* That where the pupil or pupils reside in a county operating un-

der the provisions of chapter 397, Laws of 1905, and acts amendatory and supplemental thereto, or in any other county and outside of any high-school district, the county commissioners shall allow and pay said tuition from the high-school fund of said county. Such payment to be made monthly for such time as such pupil or pupils may attend such school, on verified vouchers filed with the clerk of the high-school district or board of county commissioners wherein such pupil or pupils reside." ·

The title to this act is as follows:

"AN ACT relating to the payment of tuition of certain pupils attending high schools in counties other than that of their residence."

Appellants maintain that this part of section 2, above quoted, making reference to the Barnes act, chapter 397 of the Laws of 1905 and acts amendatory and supplemental thereto, is unconstitutional and void for the reason that it undertakes to amend and repeal two original sections of the Barnes act and one section supplemental thereto, without referring to or repealing them, viz., R. S. 72-3003 and R. S. 72-3013 of the original act and R. S. 1933 Supp. 72-3006, being section 2 of chapter 235 of the Laws of 1925. The first of these earlier sections provides that—

". . . the county treasurer shall pay the same to the treasurers of the school districts maintaining high schools according to the provisions of this act. . . ."

The section of the supplemental law, above cited, contains the following provision near the close:

". . . and said county treasurer shall pay such proportion of such fund to the respective treasurers of boards of education and school districts . . ."

Both of these sections require the county treasurer to pay the proportionate sums of the Barnes high-school fund to the several school-district treasurers. The earlier part of the last-mentioned section provides for paying each high-school district in the county $1,200 and the balance of said fund shall be apportioned among such high schools in proportion to the actual daily attendance of the pupils during the year. The other section of the original act, above cited, being R. S. 72-3013, provides:

". . . That the county commissioners shall pay such tuition from the general fund of the county where such pupil resides."

Now the new act of 1929, first above quoted, directs the county commissioners to pay to the high-school districts where the pupils attend from the high-school fund of the county where they reside. There are several radical changes affected by the law of 1929 which

never before existed: First, the county commissioners allow and pay out the fund instead of the county treasurer; second, the county commissioners pay the tuition of resident students attending high schools in adjoining counties to high-school districts of such adjoining counties from the Barnes high-school fund, instead of paying it from the general fund of the county; and third, this high-school fund, which was formerly apportioned between the several high-school districts of the county, is now paid to districts in adjoining counties.

Section 16 of article 2 of the state constitution is as follows:

"No bill shall contain more than one subject, which shall be clearly expressed in its title, and no law shall be revived or amended, unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed."

Is the allowing and paying the tuition to high-school districts in adjoining counties by the county commissioners out of the high-school fund instead of out of the general fund of the county, and the county commissioners thus disposing of this high-school fund instead of the county treasurer paying it to the school-district treasurers in a certain proportionate amount, an amendment and repeal of the provisions in the three earlier sections above cited or any one of them? It would certainly appear to be an amendment and repeal. Appellees concede that it is, but urge that it is a repeal by implication, citing texts and several Kansas decisions. The line between these two results is not easily drawn. The general rule is to hold the act valid if it can be reasonably done, and on the other hand repeals by implication are not favored. (*Kansas Breeze Co. v. Edwards*, 55 Kan. 630, 633, 40 Pac. 1004.)

The federal government and many of the states of the union do not have a constitutional provision similar to our section 16 of article 2, and it was said in *State v. Pauley*, 83 Kan. 456, 112 Pac. 141, that its use was—

". . . to prevent uncertainty and confusion which might arise from adding or striking out words and making additions or substitutions without rewriting the section as amended." (p. 464.)

Appellees cite *Parker-Washington Co. v. Kansas City*, 73 Kan. 722, 85 Pac. 781, where an existing law authorizing cities of the first class to issue bonds for the purpose of improving streets was changed by a new law applying to cities having a population of more than 50,000 to meet such expenses by the issuance of special

tax bills against the property chargeable with such costs, and it was held not to be within the purview of the constitutional provision as to amendment and repeal, and in that connection it was said in the opinion written by Judge Mason:

"The act of 1905 in a sense amends various sections of the earlier act, but it does so by implication; it does not cover their entire subject matter, and hence does not supersede them, but merely restricts the field of their operation; it is a complete and in a sense an independent enactment, which requires no reference to any other statute to make its meaning clear." (p. 724.)

The act in the case at bar affects all the Barnes high-school districts throughout the state, and takes the tuition money from a different fund in every county in the state operating under the Barnes high-school law and places the handling and control of it everywhere in the hands of different county officers.

Another case cited by appellees is *State, ex rel., v. French,* 111 Kan. 820, 208 Pac. 664, where the new law referred to the same fund used for high-school purposes by different words than those used in the former act, and also the terms "county high school" and "rural high school" were apparently used confusedly, but the constitutional question under section 16 of article 2 was not involved. Another case cited by appellees is *Harding v. Wyandotte County,* 110 Kan. 542, 204 Pac. 763, which did involve this section of the constitution, and it was held not to be in violation of its provisions. The new law permitted the board of county commissioners in counties having a certain population to construct or reconstruct a courthouse and issue bonds therefor within certain limitations without a vote of the people. It will be readily noted that this did not in fact change the existing law, but only made exceptions to it as applied to certain counties.

A recent decision cited by appellee, *State, ex rel., v. State Corporation Comm.,* 138 Kan. 159, 23 P. 2d 606, where two statutes concerning the blue-sky law were enacted at the same session of the legislature, legislative intent was the matter under consideration, rather than a constitutional question, and it was held these acts were irreconcilably conflicting and the latter enactment should prevail.

*Alter v. Johnson,* 127 Kan. 443, 273 Pac. 474, also cited by appellees, gave the following rule as regards conflicts in laws:

"A primary rule for the construction of a statute is to find the legislative intent from its language, and where the language used is plain and unambiguous and also appropriate to the obvious purpose the court should follow

the intent as expressed by the words used and is not warranted in looking beyond them in search of some other legislative purpose or of extending the meaning beyond the plain terms of the act." (Syl. ¶ 1.)

In 59 C. J. 904 and 905 it is said:

"An implied repeal is one which takes place when a new law contains provisions which are contrary to, but do not expressly repeal, those of a former law. A statute, or a provision thereof, may be repealed by implication. Whether it has been so repealed is a question of legislative intent. While such a repeal is not favored, nevertheless it must be recognized and accorded effect where it is apparent that it was intended. Conversely, there is no room for repeal by implication where no legislative intent to repeal is indicated or expressed or an intent not to repeal is apparent or manifest. It has been held that repeals of statutes by implication are not to be worked piecemeal; but, as hereinafter shown, repugnancy may effect an implied repeal only *pro tanto* to the extent of the repugnancy. . . .

"The repeal of statutes by implication is not favored. The courts are slow to hold that one statute has repealed another by implication, and they will not make such an adjudication if they can avoid doing so consistently or on any reasonable hypothesis, or if they can arrive at another result by any construction which is fair and reasonable. Also, the courts will not enlarge the meaning of one act in order to hold that it repeals another by implication, nor will they adopt an interpretation leading to an adjudication of repeal by implication unless it is inevitable, and a very clear and definite reason therefor can be assigned. Furthermore, the courts will not adjudge a statute to have been repealed by implication unless a legislative intent to repeal or supersede the statute plainly and clearly appears. The implication must be clear, necessary and irresistible."

In 25 R. C. L. 922 it is said:

"Where a repeal, if admitted, would operate to the prejudice of the government, the supposed repugnancy ought to be clear and controlling before it can be held to have that effect."

The case of *Atchison, T. & S. F. Rly. Co. v. Board of Education*, 123 Kan. 378, 255 Pac. 60, was where the legislature attempted to change and modify an existing law relating to levies for school purposes by a new act by eliminating the maximum limit of levy, the classification of cities of the first class was changed from a population of 38,000 to 40,000, and a limit of six mills' levy in one class and five mills in another, thus striking out eleven words and the first proviso in the old law, and "new matter was inserted radically changing the law." The new law was held to be in violation of section 16 of article 2, and unconstitutional. The following is part of the opinion so holding:

"Invalidity was multiplied, not cured, by dealing in wholesale fashion with

many statutes whose provisions were changed without compliance with the constitutional requirement. The act was not legislation by reference, because legislation by reference leaves the law referred to unmodified. (*State v. Shawnee County*, 83 Kan. 199, 110 Pac. 92.) The act was not a new, independent superseding act, a code complete in itself, relating to power of taxing bodies, including boards of education in cities of the first class, to levy taxes. It was not interpretative. It could not operate to repeal the law of 1907 by implication because that law was expressly referred to and modified, and attempt was made to repeal the inconsistent portion. The purpose of the constitutional restriction was 'to prevent uncertainty and confusion which might arise from adding or striking out words and making additions and substitutions without rewriting the section as amended.'" (p. 382.)

In a case from Stafford county, concerning the levy of taxes for the support of the Barnes high schools in that county, the new act attempted to reduce the levy and insert a new basis of population, and it was said in the opinion:

"They are taxation statutes which attempt to amend a school law found in another statute book, which has itself been amended many times, and the method of amendment is to strike out part of the law, insert a substituted provision, and leave the remainder standing. The result is confusion in legislation, which section 16 of article 2 of the constitution sought to forestall." (*School District v. Hahn*, 126 Kan. 117, 119, 267 Pac. 28.)

In *Hicks v. Davis*, 97 Kan. 312, 154 Pac. 1030, it was held:

"An act of the legislature which attempts expressly to amend or repeal a prior act must conform to the procedure prescribed by the constitution. (Const., art. 2, § 16.)

"In the body of a section of a statute enacted by the legislature of 1913 was an item appropriating a sum of money to the petitioner. The legislature of 1915 sought to abrogate that item by an act purporting to repeal the act of 1913 'in so far as it relates to item 106 of section 1 of said chapter.' *Held*, that the later act wholly disregarded section 16 of article 2 of the constitution and is consequently void." (Syl. ¶¶ 5, 6.)

See, also, *State v. Barrett*, 27 Kan. 213; *State v. Carter*, 74 Kan. 156, 86 Pac. 138; *Fisher v. Beck*, 99 Kan. 180, 160 Pac. 1012; and *State v. Webb*, 133 Kan. 650, 3 P. 2d 485.

Besides, this later act of 1929 did not attempt to cover all the grounds contained in any of the three earlier enacted sections, and under the authorities above cited it could not be held to have repealed any of them by implication.

We conclude that section 2 of chapter 239 of the Laws of 1929 is an attempt to amend preëxisting laws in violation of section 16 of article 2 of the constitution, and is therefore unconstitu-

tional and void, and the demurrer to the plaintiff's petition should not have been sustained.

Other questions of importance are argued in the briefs, but we deem the ruling on this question all that is necessary to determine at this time.

The judgment is reversed and the cause remanded with directions to overrule the demurrer to the petition.